NORTH CAROLINA ELECTRIC POWER COMPANY v. FRENCH BROAD MANUFACTURING COMPANY.

(Filed 15 December, 1920.)

**1. Negligence—Joint Torts—Actions—Judgments—Concurrent Negligence —Third Person—Damages.**

Where the joint and concurring negligence of two parties cause an injury to a third, and a recovery has been had of one of them in an action brought against both, the one paying the judgment has no right of action over, and may not recover of the other a ·proportionate part of the damages.

**2. Same—Electricity—Wires—Insulation—Contributory Cause.**

Where a company generating electricity has supplied its customers therewith over high voltage and deadly wires, transformed at the customer's plant, to wires of harmless voltage, except for the furnisher's negligence in not insulating its wires; and the user had made the place of danger accessible by elevating a railroad track for its use at its plant with the knowledge of the furnisher, the latter may not recover of the former its proportionate part of the damages paid under a judgment in an action against it alone, formerly brought by the administrator of a deceased eleven-year-old boy whose death it has caused; and a motion as of nonsuit upon evidence of this character should be granted.

CIVIL ACTION, tried before *Long, J.,* at August Term, 1920, of BUNCOMBE, upon these issues:

"1. Did the defendant negligently create a condition about its transformer house which enabled the intestate, William Lanning, to come into contact with plaintiff's wires, as alleged in the complaint? Answer: 'Yes.'

"2. If so, was such negligence of defendant the primary cause of said William Lanning receiving injuries resulting in death, as alleged in the complaint? Answer: 'Yes.'

"3. What damages, if any, is the plaintiff entitled to recover of the defendant on account of moneys paid out in the case of Lanning, administrator, v. The North Carolina Electrical Power Company and the French Broad Manufacturing Company? Answer: '$1,031.60 with interest from 3 July, 1918.'

"4. Was the plaintiff North Carolina Electrical Power Company primarily responsible and liable for the negligent killing of William Lanning, as alleged in the answer of the defendant French Broad Manufacturing Company? Answer: 'No'."

From the judgment rendered defendant appealed.

*Mark W. Brown for plaintiff.*
*Martin, Rollins & Wright for defendant.*

BROWN, J.  This action was brought by the plaintiff for the purpose of recovering from the defendant the amount which the plaintiff had been compelled to pay out on account of a judgment previously rendered in the Superior Court of Buncombe County, North Carolina, in favor of J. S. Lanning, administrator of William Lanning, against the plaintiff and the defendant, because of the alleged negligent killing of said William Lanning by the negligence of the plaintiff and the defendant.

It appeared in evidence that on 14 May, 1917, William Lanning, a boy about eleven years of age, was killed at a transformer house maintained by the defendant French Broad Manufacturing Company, at its cotton mill near Asheville, by contact with three electric wires maintained by the plaintiff to furnish power to operate defendant's mill.  The administrator of William Lanning brought suit against the plaintiff and the defendant, and recovered damages against both for the death of Lanning.  Each of the defendants to that case had paid one-half of the judgment rendered.

In the present cause the plaintiff claims that the negligence of the defendant was primarily and solely the cause of the death of William Lanning, and in consequence the plaintiff was entitled to recover the amount it had paid out on account of the verdict and judgment against it above mentioned.

It appeared from the testimony that the defendant maintained a cotton manufacturing plant situated on the east side of the French Broad River, a short distance east of a public highway, following the course of the river.  That on the west side of the defendant's mill, and on its premises, was a transformer house built of brick, about 10 feet wide from 10 to 14 feet in height and about 22 feet long; and that the roof of the transformer house on the west side, prior to the building of the fill hereinafter mentioned, was about 10 feet from the ground.  That the plaintiff for many years had maintained three high-power electric wires which conducted current into the defendant's transformer house at the north end; that these wires came down from a cross-arm on a pole to another cross-arm, about 18 inches from the transformer house, and were there fastened to the cross-arm; and then extended practically on a level into the transformer house at a point about 14 inches from the top of the roof; that these wires were bare and uninsulated, and were situated about 11 feet from the ground; that some 4 or 5 feet below these wires were low-tension electric wires which came out of the transformer house and were extended into the defendant's mill; that these low-tension wires carried a current which was not dangerous, but the high-tension wires of the plaintiff constantly carried a deadly current.

It further appeared in evidence that several months prior to the death of young Lanning, the defendant began the construction of a railroad

sidetrack along by the west side of its mill, and immediately west of the transformer house. That in building this railroad it was necessary to make a fill along the side of the transformer house, and that this fill had been commenced several hundred feet north of the mill, and built on from time to time, and extended along by the transformer house, and at the time of the death of young Lanning the fill had been raised to a point about 4 or 5 feet from the roof of the transformer house on the west side, and that the plaintiff's high-tension transmission wires were within 5 or 6 feet of the earth after the fill was made. It further appeared that the defendant's officers and agents, and particularly its superintendent, Sam Johnson, knew of the building of this fill, and that there was some evidence that young Lanning had gotten from the top of the transformer house on to the plaintiff's uninsulated wire. There was further evidence to the effect that the high-tension wires were not insulated; that there was no fence or guard of protection of any kind to keep persons from coming in contact with the wire; that the superintendent of the plaintiff knew there was no protection to the wires, and knew of the public highway nearby; that there was a village near the place, and many children in the neighborhood; and that the superintendent and other employees of the plaintiff company frequently passed the defendant's mill. It further appeared in evidence that the plaintiff maintained a steam electric station immediately north of the defendant's mill, about 400 feet distant therefrom, and that standing in the front doorway of the plaintiff's electric power station one could see the fill at the defendant's mill, and see the work going on there.

There was abundant evidence to the effect that plaintiff's wires could have been covered, or some guard or protection put over them so as to render it practically impossible for one to come in contact with them.

The witness Woodcock, an expert, testified that these wires of the plaintiff, conveying 6,600 volts were uninsulated and exposed, and that as they came within 12 or 14 inches of the top of the transformer house, it was usual and ordinary with electric companies to put protection around such wires to guard them, and that it could have been done; that this could have been done without reference to any embankment or anything of that sort. On the trial before his Honor, Judge Stacy, in response to the first issue, the jury found that William Lanning was killed by the negligence of the North Carolina Electrical Power Company; under the second issue the jury found that he was killed by the negligence of the French Broad Manufacturing Company. The damage was assessed at $2,000. In the judgment rendered it is declared that William Lanning was killed by the joint and concurrent negligence of both companies. One-half of the judgment was paid by the plaintiff and the other half by the defendant.

We are of opinion that the motion to nonsuit should have been sustained. We doubt very much whether there is any evidence of negligence upon the part of the defendant, or any breach of duty which it owed to William Lanning. The construction of the railroad track and the embankment was essential to the prosecution of the defendant's business, and there is no evidence that it was done negligently or needlessly, or that it could have been done in any other way. The fact that it made it easier for boys to get on top of the transformer house does not necessarily make it negligence, but we assume that the verdict of the jury was correct and that William Lanning was killed by reason of the negligence of the plaintiff and the defendant. This verdict therefore established the fact, binding upon both parties, that both were guilty of negligence, which concurred in causing Lanning's death. Upon the entire evidence we are of opinion with Judge Stacy in his judgment that such negligence was joint and concurring. This being so, there can be no recovery over upon the part of the plaintiff for the part of the judgment paid out by it. The principle seems to be well settled that "Ordinarily if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury."

There can be no question that the plaintiff and the defendant owed to William Lanning the duty to protect him as far as it was reasonably possible from danger from coming in contact with those highly charged wires. As the wires belonged to the plaintiff, and it had control of them, it was unquestionably as much its duty, if not more, to guard them and render them harmless as it was the duty of this defendant. Therefore, assuming that they are equally culpable, there can be no recovery upon the part of the plaintiff.

In the case of *Central of Georgia Ry. Co. v. Macon Ry. & Light Co.,* it is well said that: "The negligence of two persons may be truly concurrent, even as among themselves, though the negligence of the one began antecedently to the negligence of the other, and may, in a greater or less degree, have induced it; and in such cases no right of contribution or indemnity exists between the wrongdoers. Where two separate persons owe to a third person the same concurrent duty as to a particular thing, and by reason of the negligent failure of each and both of them to perform that duty the third person is injured, and he sues only one of those who owed him the duty (basing his right of action solely upon the tortious state of affairs brought about by this joint and common neglect of duty), and recovers damages, no action over arises in favor of the person thus subjected to the sole liability against the other person who owed the same duty."

This question is very ably discussed by *Mr. Justice Day* in *Union Stock Yards v. R. R. Co.,* 196 U. S., 217: "A railroad company delivered a car with imperfect brakes to a terminal company; both companies failed to discover the defect, which could have been done by proper inspection; an employee of the terminal company, who was injured as a direct result of the defective brake, sued the terminal company alone and recovered. In an action brought by the terminal company against the railroad company for the amount paid under the judgment: *Held,* that as both companies were wrongdoers, and were guilty of a like neglect of duty in failing to properly inspect the car before putting it in use, the fact that such duty was first required of the railroad company did not bring the case within the exceptional rule which permits one wrongdoer, who has been mulcted in damages, to recover indemnity or contribution from another, on the ground that the latter was primarily responsible."

Taking the finding of the jury, as we must, to be conclusive that William Lanning was killed by the negligence of both plaintiff and defendant, there is nothing in this record which tends to prove that they are not *pari delicto* as to each other, or which takes the case out of the general rule that when two parties, acting together, commit a wrongful act, the party who is held responsible cannot have contribution from the other because both are equally culpable or *particeps criminis* and the damage resulting from their joint wrong.

The principle is laid down and fully discussed by *Holmes, C. J.,* in *Glynn v. R. R.,* 175 Mass., 510. In concluding his opinion in the case of *Union Stock Yards v. R. R., supra, Mr. Justice Day* says: "Both the railroad company and the terminal company failed by proper inspection to discover the defective brake. The terminal company, because of its default, has been held liable to one sustaining an injury thereby."

We do not think the case comes within this exceptional class, which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another. In the case under consideration, the plaintiff and the defendant owed a similar duty to William Lanning, that is, to protect him from injury from these dangerous wires. There doesn't seem to be any reason that there is any difference or degree in such duty. The jury has found that both failed to discharge such duty. We see nothing, therefore, to take the case out of the general rule. This is the principle which seems to be well established by the decisions of this Court. In *Hodgin v. Public Service Co.,* 179 N. C., 449, under the instructions of the Superior Court the jury found the public-service company primarily liable, but this Court set aside the finding and held that upon the facts the injury was caused by the concurring negligence of both defendants, and that there was no primary liability. In *Ridge v. High Point,* 176 N. C., 421, this question is fully considered and the

primary liability of one of the defendants, the furniture company, was denied by *Mr. Justice Walker,* who said: "We cannot see why in any phase of the evidence the defendants (town of High Point and furniture company) were not jointly liable to the plaintiff for the death of her intestate, which was plainly caused by their united and wrongful act."

The same learned judge also considered this question in *Doles v. R. R.,* 160 N. C., 319, and declared, in substance, that where two companies are jointly negligent there is no right of indemnity, and that the law cannot recognize equities as springing from a wrong in favor of one who was concerned in committing it. Where two or more persons have participated in the commission of a wrong the general rule undoubtedly is that a right to contribution will not arise in favor of the one held responsible by the injured party. 38 Cyc., 493; *Churchill v. Holt,* 131 Mass., 67; *Gregg v. Wilmington,* 155 N. C., 24; there is an elaborate discussion of the subject in the case of *Tacoma v. Bonnell,* Anno. Cases 1913 V. p. 934.

A large number of cases are cited, and it is held that where the injury is the result of the concurrent negligence of two persons neither has a remedy over against the other. It is also stated in the body of the decision in *Tacoma v. Bonnell, supra,* that: "The answer in this case shows that the city was guilty of negligence in maintaining its primary and secondary wires in a dangerous condition when they might readily have made them safe so that injury would not result if the wires should come in contact. If the city had not been negligent in this respect, the accident could not have occurred, even though the defendant in this action was negligent in causing the wires to come in contact. The concurring negligence of both parties, therefore, caused the injury. Under the authorities cited the parties were *in pari delicto,* and neither may recover against the other."

See, also, *Robertson v. Trammell,* 83 S. W., 258; *R. R. Co. v. Vance,* 41 S. W., 167; *Sparrow v. Bromage,* 83 Conn., 27; 19 Anno. Cases, 796; *Forsyth v. R. R.,* 87 Pac., 24; *Telephone Co. v. Mansfield Water Co.,* 179 S. W., 389; *Mills v. Boston & Maine R. R.,* 218 Mass., 593; the decision in this last case is very apposite. The Court says: "The plaintiff relies upon the well recognized exception to the general rule that there can be no contribution between joint tort feasors, to the effect that a plaintiff may recover over against other joint tort feasors, where, although he has been negligent as to third persons in failing to perform a duty cast on him by law, he nevertheless has acted in good faith and has not participated in any wrongful conduct, has shown all the caution which the defendant had a right to expect of him, and has relied upon the defendant to perform his active legal duty of due care, whose decisive and definite act of failure in this respect has exposed the plaintiff to liability to a third person arising from inference of law, without

moral guilt on the plaintiff's part and without his sharing in the wrongful cause of the injury. 'It relies upon his branch of the case in *Jacobs v. Pollard,* 10 Cush., 287, 289; *Lowell v. Boston & Lowell Railroad,* 23 Pick., 24, 32; *Gray v. Boston Gas Light Co.,* 114 Mass., 149; *Boston Woven Hose & Rubber Co. v. Kendall,* 178 Mass., 232. It is manifest, however, from the allegations of the plaintiff's declaration that this principle cannot apply, because judgment has been recovered against it for causing the death of its employee, which could only have been assessed in the substantial amount alleged by reason of some degree of direct culpability on its part. For the reasons pointed out in the earlier part of this opinion, such a verdict for that cause could not have been recovered against the plaintiff if, as between it and the present defendant, it was free from any wrongdoing. It follows that the principal which the plaintiff invokes as the ground of its right to recover has no application to the facts disclosed by its declaration."

Another very pertinent case is *Central of Georgia R. R. Co. v. Macon R., etc., Co.,* 71 S. E., page 1076, where it appeared that the defendant company maintained wires in the railway company's yard to supply light. An electric wire was fastened on the coal chute, the apron of which was lowered by a steam cable. The wire sagged against the cable and because the insulation either had become worn or was originally inadequate, the current leaked from the wire to the cable, an employee of the roalroad company coming in contact with the cable received a shock which killed him; this employee sued the railway company for damages and recovered; the railroad company then brought suit against the electric light company for indemnity or contribution. A judgment of nonsuit in the case was affirmed on appeal.

This decision seems to us to be conclusive of the matter here involved.

It is useless to multiply authorities to support a principle so generally recognized.

There is only one ground of negligence imputed to the plaintiff in the *Lanning case,* and that is a failure to properly guard its dangerous wires. This was a primary duty which could not be shifted to this defendant, and which the plaintiff failed, according to the verdict of the jury in the *Lanning case,* to discharge. The failure to discharge this duty was the concurrent cause of Lanning's death, to say the least, and there is no reason why the sole liability should be imposed upon this defendant. The liability of the plaintiff to the defendant upon the counterclaim, in which the defendant seeks to recover from the plaintiff the half of the judgment paid out by the defendant, is foreclosed by the verdict of the jury on the fourth issue. We find no assignment of error which brings before us the duty of reviewing the rulings of the court upon that issue.

The motion of the defendant for judgment of nonsuit is allowed.

Reversed.