18089

ATLANTIC COAST LINE RAILROAD COMPANY, Appellant, v. Michael K. WHETSTONE, d/b/a Commodity Engineering Company, Respondent.

(132 S. E. (2d) 172)

*Messrs. John H. Lumpkin, H. Simmons Tate, Jr.,* and *Boyd, Bruton & Lumpkin,* of Columbia, *for Appellant,*

*Messrs. Whaley & McCutchen* and *Hoover C. Blanton,* of Columbia, *for Respondent,*

*Messrs. John H. Lumpkin, H. Simmons Tate, Jr.,* and *Boyd, Bruton & Lumpkin,* of Columbia, *for Appellant, in Reply,*

July 16, 1963.

Moss, Justice.

This action was instituted by Atlantic Coast Line Railroad Company, appellant herein, against Michael K. Whetstone, doing business as Commodity Engineering Company, the respondent herein, to recover Six Thousand Two Hundred Fifty and 00/100 Dollars, paid by appellant to A. H. Monteith, one of its employees, who was injured in the course of his employment.

The complaint of the appellant alleges that it is a common carrier operating in Interstate Commerce and is subject to the Federal Employers' Liability Act, 45 U. S. C. A. § 51 *et seq.;* and that the respondent was on or prior to August 20, 1960, engaged in constructing a building adjacent to a spur track of the appellant in its railroad yard in Columbia, South Carolina. It is then alleged that the respondent, in the course of constructing such building, erected and permitted an unmarked and unlighted scaffold to remain in such close

proximity to the appellant's spur track that there was not sufficient clearance for its engines and railroad cars to pass without striking the scaffold. It is then alleged that on August 20, 1960, at about 9:45 P. M. that A. H. Monteith, in the regular course of his duties in behalf of the appellant, was riding the lead end of a tank car which was being moved at a speed of about three or four miles per hour over the spur track to a point beyond the place where the scaffold had been erected. It is then alleged that when the scaffold became visible and it was apparent that the tank car could not clear it, that the employee signalled for the engineer to stop the car but before such could be brought to a stop the tank car struck the scaffold, causing it to collapse and fall on A. H. Monteith, thereby seriously injuring him. It is then alleged that A. H. Monteith made a claim against the appellant, under and pursuant to the Federal Employers' Liability Act, for damages for the injuries he sustained. It is further alleged that the appellant, recognizing its non-delegable duty to furnish its employees a safe place to work, paid to the said A. H. Monteith the sum of Six Thousand Two Hundred Fifty and 00/100 Dollars in good faith to settle his claim against it, under the aforesaid Act. The appellant asserts that it is entitled to indemnity from the respondent for the full amount so paid because the injury to its employee was directly and proximately caused by the active gross negligence and carelessness of the respondent in erecting and permitting an unlighted and unmarked scaffold to remain so close to appellant's spur track that its trains lawfully using such could not pass without striking the same; and in failing to warn the appellant or its employees of the existence of, or the danger created by such scaffold.

The respondent demurred to the complaint upon the ground, *inter alia,* that the appellant is seeking indemnity as between alleged joint tort-feasors which is not permitted by the laws of this State. The trial Judge sustained the demurrer and this appeal followed.

It is elementary that in passing upon a demurrer the Court is limited to a consideration of the pleadings under attack, all of the factual allegations thereof that are properly pleaded are for the purpose of such consideration deemed admitted. When a fact is pleaded, whatever inferences of law or conclusions of fact may properly arise from it are to be regarded as embraced in such averment. *Alderman v. Bivin,* 233 S. C. 545, 106 S. E. (2d) 385.

It is the position of the respondent that the appellant's liability to its employee, A. H. Monteith, under the Federal Employers' Liability Act, could exist only if the appellant was negligent. The rule is that in order for an injured employee to recover under the aforesaid Act he must prove that the employer was negligent and that such negligence was the proximate cause in whole or in part. *Williamson v. Southern Railway Company,* 183 S. C. 312, 191 S. E. 79; *Inman v. Baltimore & Ohio R. Co.,* 361 U. S. 138, 80 S. Ct. 242, 4 L. Ed. (2d) 198. Negligence must have been the cause of the employee's injury, and in the absence of negligence on the part of the employer a recovery cannot be had. 35 Am. Jur., Master and Servant, Section 400, at page 822.

An injured person can sue any one or all of several joint tort-feasors whose negligent acts or omissions unite to produce his injury. *Pendleton v. Columbia Ry., Gas & Electric Co. et al.,* 133 S. C. 326, 131 S. E. 265, and *Hollifield v. Keller,* 238 S. C. 584, 121 S. E. (2d) 213. However, when only one joint tort-feasor is sued, recovery against such precludes the injured person from thereafter bringing an action against the other tort-feasor. *Camp v. Petroleum Carrier Corp. et al.,* 204 S. C. 133, 28 S. E. (2d) 683.

We have held that negligence, to render a person liable need not be the sole cause of an injury; but it is sufficient if it is a proximate concurring cause. *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321.

The complaint in this action alleges that A. H. Monteith, the employee of the appellant, made a claim against it for damages under the Federal Employers' Liability Act, and it "recognizing its non-delegable duty to furnish its employees a safe place to work" paid such injured employee Six Thousand Two Hundred Fifty & 00/100 Dollars, in good faith to settle such claim. Since no liability of the appellant existed in favor of its employee in the absence of negligence on its part, it is logical to conclude that the appellant, in making settlement with its injured employee, admitted that it was guilty of actionable negligence and such was, at least, a concurring proximate cause of such employee's injury.

Since the appellant now asserts its right to indemnity from the respondent, such action presupposes actionable negligence of both parties towards Monteith. *Best v. Yerkes,* 247 Iowa 800, 77 N. W. (2d) 23, 60 A. L. R. (2d) 1354. Therefore, the appellant and the respondent were joint tort-feasors and their several acts united to produce the injury sustained by the employee of the appellant.

The general rule is that there can be no indemnity among mere joint tort-feasors. Since the decision in *Merryweather v. Nixan,* decided in 1799, 8 T. R. 186, 101 Eng. Reprint 1337, it has been said to be an established principle of the common law that as between joint tort-feasors there is no right of contribution or indemnity, the rule being premised on the doctrine that the Courts are not open to wrongdoers to assist them in adjusting the burdens of their misconduct, and that the law will not lend its aid to one who founds his cause of action on a delict. 27 Am. Jur., Indemnity, Section 18, page 467.

In the case of *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A. (2d) 368, 24 A. L. R. (2d) 319, it was held that in the case of concurring or joint tort-feasors, having no legal relation to one another, each of them owing the same duty of care to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity

among the authorities that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one even though one may have been much more negligent than the other. It was further held that the rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury. In support of the foregoing rule there is cited the cases of *Union Stockyards Co. of Omaha v. Chicago, B. & Q. R. Co.,* 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453; *Massachusetts Bonding & Insurance Company v. Dingle-Clark Co.,* 142 Ohio St. 346, 52 N. E. (2d) 340; *Fidelity & Casualty Co. v. Federal Express, Inc.,* 6 Cir., 136 F. (2d) 35, and numerous other cases.

The case of *State ex rel. Siegel v. McLaughlin,* Mo. App., 315 S. W. (2d) 499, was an action for injuries sustained by a passenger on a street car owned by the defendant and operated by its employee, also a defendant, which collided with an automobile owned and driven by a third defendant. The street car company filed a cross-claim against the owner of the automobile, seeking indemnity in the event that damages were awarded against it, alleging that the collision was the result of the negligence of the automobile owner in turning without warning onto the street car tracks and coming to a sudden halt. In refusing to allow indemnity the Court followed the rule stated in the *McCabe* case to the effect that no right of indemnity exists between joint tort-feasors who have no legal relation to one another and who have breached the same duty to the injured person, even though one tort-feasor may be very much more negligent than the other.

In *Crouch v. Tourtelot, Mo.,* 350 S. W. (2d) 799, the Court held that indemnity should not be allowed "as between joint tort-feasors involved in a two-car automobile

collision on a highway because of supposedly different types or degrees of negligence."

In the case of *North Carolina Electric Power Co. v. French Broad Mfg. Co.,* 180 N. C. 597, 105 S. E. 394, the Court said:

"Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury."

The rule that there is no right to indemnity as between joint tort-feasors is subject to many exceptions. The *ratio decidendi* of cases granting indemnity has frequently been expressed in such general terms as that the indemnitee was not personally at fault; the parties were not *in pari delicto;* the negligence of the indemnitee was merely passive as compared to the negligence of the indemnitor which was active; and the liability of the indemnitee was only secondary as compared to the liability of the indemnitor which was primary. It would seem that such general propositions as have been adduced in support of particular results in cases allowing indemnity as an exception of the general rule will not serve as adequate standards to determine whether or not a tort-feasor guilty of ordinary negligence may recover indemnity against a tort-feasor guilty of gross negligence. 88 A. L. R. (2d), at page 1357. *Jacobs v. General Accident Fire & Life Assur. Corp.,* 14 Wis. (2d) 1, 109 N. W. (2d) 462, 88 A. L. R. (2d) 1347.

It is our conclusion that the appellant and the respondent were joint tort-feasors and even though their acts of negligence were of different degrees, such united and concurred to produce the injury sustained by Monteith. We think the trial Judge correctly sustained the demurrer interposed by the respondent because there can be no indemnity among mere joint tort-feasors.

In view of the conclusion above reached it is unnecessary for us to consider the other exceptions interposed by the appellant.

Let it be understood that our decision in this case in nowise encroaches upon the rule that an employer has a right of action over against his employee where the employer has been made liable to a third party by reason of the employee's negligence. *Jenkins v. Southern Railway Co.*, 130 S. C. 180, 125 S. E. 912.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent.

BRAILSFORD, Justice (dissenting).

The opinion in this case, although recognizing that there are exceptions to the rule denying indemnity as between joint tort-feasors, throws plaintiff's claim out of court without a trial. Being convinced that the allegations of the complaint will support the proof of facts constituting a cause of action for indemnity, under exceptions to the general rule which are logical, just and fully supported by authority, I respectfully dissent.

*Merryweather v. Nixan,* 1799, 8 Tr. 186, 101 Eng. Reprint 1337, is credited wtih having established the rule against contribution between joint tort-feasors. This case involved concerted action and intentional wrong. "The ground of the decision would appear to have been simply the fact that the parties had acted intentionally and in concert, and the plaintiff's claim for contribution rested upon what was, in the eyes of the law, entirely his own deliberate wrong." Prosser, Law of Torts, page 247. However, in this and in a great majority of jurisdictions in this country (unlike in England), the rule has been applied generally whenever the concurrent negligence of two or more parties

has contributed to an injury. Obviously, this rule sometimes results in the injustice of the principal wrongdoer going scot-free, while the less guilty person is mulcted for the entire loss. (Witness the result in this case.) Recognizing this, the legislatures of some twenty states have modified or abrogated the rule against contribution, and the courts of six or seven states have refused to extend the original doctrine. Prosser, Law of Torts, page 249.

More important to the problem at hand, there is strong authority for allowing indemnity as between joint tort-feasors where the circumstances make it just and equitable that one of the wrongdoers bear the entire loss. The decisions principally relied upon in the opinion all recognize exceptions to the general rule denying indemnity which the facts alleged in this complaint fit.

In *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A. (2d) 368, 24 A. L. R. (2d) 319, a clear case of joint tort-feasors in the ordinary sense, in which indemnity was properly denied, the court said:

"* * * There is, of course, a fundamental difference between indemnity and contribution. The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence,—a doctrine which, indeed, is not recognized by the common law. * * * It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. * * *" 77 A. (2d) 370, 24 A. L. R. (2d) 323.

After reciting a number of examples, some of them analogous here, in which secondary liability was found to exist, entitled the party to indemnity against the primarily liable tort-feasor, the court continued:

"Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law *or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.*" (Italics added) 77 A. (2d) 371, 24 A. L. R. (2d) 324.

As pointed out in the majority opinion, *Union Stockyards Co. v. Chicago B. & Q. R. Co.*, 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453; *Massachusetts Bonding & Insurance Co v. Dingle-Clark Co.*, 142 Ohio St. 346, 52 N. E. (2d) 340; *Fidelity & Casualty Co. v. Federal Express, Inc.*, 6 Cir., 136 F. (2d) 35, were cited in the *McCabe* case as sustaining the court's conclusion. An examination of these decisions will show that each of them also recognizes the rule which I think to be applicable to the facts with which we deal. For example, in Union Stockyards Co., after referring to a number of cases in which indemnity was allowed between parties held legally liable for a tort, the court stated that in all of them "the wrongful act of the one held finally liable created the unsafe or dangerous condition from which the injury resulted. The principal and moving cause, resulting in the injury sustained, was the act of the first wrongdoer, *and the other has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other.*" (Italics added.)

The rule which I urge as applicable here was stated in *State v. McLaughlin, Mo. App.*, 315 S. W. (2d) 499, the

next authority relied upon in the majority opinion, as follows:

"The area in which a party held liable for negligence may secure indemnity from another party also negligent is closely circumscribed. It embraces a group of special situations and relationships where it has seemed reasonable and desirable to impose the ultimate responsibility on the person found to have played the active or primary role in the negligent situation in favor of one also held liable, but whose part in the event is passive or secondary. In such situations the parties are said not to be *in pari delicto*." 315 S. W. (2d) 502.

In support of this rule, the court reviews a number of cases from Missouri and Texas. From the Texas cases it deduces the rule that "two elements must exist before indemnity is granted; (1) no breach of any duty owed to the indemnitor by the indemnitee, and (2) breach of duty to the indemnitee by the indemnitor." To me it is clearly inferable from the allegations of the complaint that there was a breach of duty owed to plaintiff by the defendant, but no corresponding breach of duty owed to defendant by plaintiff. See *Wheeler v. Glazer*, 137 Tex. 341, 153 S. W. (2d) 449, 140 A. L. R. 1301, which, on close analysis, strongly supports plaintiff's claim to indemnity.

With respect to other decisions allowing indemnity reviewed in the *McLaughlin* case, the court said:

"* * * Liability for indemnity was predicated on the well known principle that where one party creates a condition which causes an injury, and the other party does not join therein but is exposed to liability on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other does not apply. The right to indemnity in such cases might be, and sometimes is, explained on the ground that the negligence of the one seeking indemnity is 'passive' and that of the other tort-feasor is 'active'. Such principle cannot be applied in the case of moving vehicles where both tort-feasors are found to be guilty of active and

concurrent negligence in the operation and control of their respective vehicles and jointly create the dangerous situation which results in the plaintiff's injury." 315 S. W. (2d) 504.

Indemnity was denied in the *McLaughlin* case because "it appears from the allegations of the petition that defendants are charged with active and concurrent negligence, and that such negligence caused the collision. It also appears that each of the defendants is charged with conduct amounting to a violation of duty owed, not only to the injured party, but to each other as well. * * *" 315 S. W. (2d) 504. Compare *Seaboard Air Line Railroad Company v. American District Electric Protective Co.,* 106 Fla. 330, 143 So. 316.

In *Crouch v. Tourtelot,* Supreme Court of Missouri, *En Banc,* November 13, 1961, 350 S. W. (2d) 799, the next authority relied upon, again a case of ordinary joint tort-feasors in which indemnity was properly refused, the court recognized the exception which I urge as applicable here by the following language:

"Our courts have, in a long line of cases, permitted the recovery of indemnity by those to whom negligence is imputed as a purely secondary liability, *or where the legal negligence of the indemnitee rests solely in his failure to discover and correct a dangerous condition caused solely by the one sought to be charged. * * *"* (Italics added.) 350 S. W. (2d) 805.

Finally, the following quotation from *North Carolina Electric Power Co. v. French Broad Manufacturing Co.,* 180 N. C. 597, 105 S. E. 394, also relied upon in the majority opinion, is by no means inconsistent with plaintiff's claim to indemnity.

"We do not think the case comes within this exceptional class which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another. In the case under consideration the plaintiff and the defendant owed a similar duty to William Lanning; that is, to protect him from injury from these dangerous wires.

There does not seem to be any reason that there is any difference or degree in such duty. The jury has found that both failed to discharge such duty. We see nothing, therefore, to take the case out of the general rule. * * *" 105 S. E. 396.

I am convinced that the foregoing authorities, on which the majority opinion is largely predicated, are entirely consistent with the allowance of plaintiff's claim to indemnity upon the theory that its negligence in failing to provide its employee with a safe place to work was entirely passive and secondary and that the active wrong of the defendant in erecting the scaffold in close proximity to the track, without lights or other warning, was the primary cause of the injury. No one would contend that if on these allegations the plaintiff were claiming damages for an injury to its locomotive, the complaint would be demurrable. Therefore, the allegations of the complaint do not show that plaintiff was contributorily negligent nor that plaintiff breached any duty which it owed to the defendant. Of course, if it should appear at the trial that a proximate cause of the injury was the failure of the train crew to keep a reasonable lookout for obstructions on the track, this would amount to active negligence on plaintiff's part and recovery would be barred under the cited authorities.

There are several cases in which railroads have been allowed indemnity for claims paid under the Federal Employers' Liability Act, which are not discussed in the majority opinion, to which I now refer.

In *Booth-Kelly Lumber Company v. Southern Pacific Company,* Ninth Circuit, 183 F. (2d) 902, 20 A. L. R. (2d) 695, one Powers, a brakeman, was injured when he came in contact with a wood cart which had been negligently left near a spur track by Booth-Kelly. After settling a judgment recovered against it by Powers, the railroad sued Booth-Kelly on a contract between them which entitled the railroad to indemnity unless it was jointly or concurrently negligent, in which case the contract provided for contribution. In construing the contract, the court adverted to com-

mon law principles and concluded that the contractual provision for full indemnity applied to cases in which the railroad was guilty of only passive negligence and would, therefore, have a common law claim for indemnity against the primary wrongdoer. After reviewing a number of cases which the court found to establish this common law rule, the court continued:

"The rules which these three cases, Washington Gas Co., Union Stockyards, and Astoria, [161 U. S. 316, 16 S. Ct. 564, 40 L. Ed. 712; 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453; 67 Or. 538, 136 P. 645, 49 L. R. A., N. S., 404], exemplify have received approval in many cases, the effect of which has been summarized in the Restatement of the Law of Restitution. The ordinary rule denying indemnity or contribution to a joint tort-feasor, is stated in section 102 as follows:

" 'Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other.'

"The rule enforced in the Washington Gas Co. and the Astoria cases is stated in section 95 as follows:

" 'Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it is the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition.'

"When viewed against the background of these accepted and well-known common law rules, which we think the parties must have had in mind, the separate portions of paragraph 7 of the contract appear to be directed to cover the two types of cases covered by these rules. We think that

the first portion of the language here to be construed, (note 2, supra), was intended to cover a case of the kind dealt with in the Washington Gas Co. and the Astoria cases, and in section 95, supra. And we think that the portion following the semicolon (note 3, supra), was intended to provide for contribution in such cases as those represented by the Union Stockyards case, and section 102, supra." 183 F. (2d) 909, 910, 20 A. L. R. (2d) 706, 707.

Although Booth-Kelly was an action on a contract, the strong opinion is entitled to weight as a precedent for allowing common law indemnity in a factual situation which is indistinguishable from the one presented on this record. It was followed, on analogous facts, in *Baltimore & Ohio Railroad Co. v. Alpha Portland Cement Co.*, Third Circuit, 218 F. (2d) 207.

In *United States v. Chicago, R. I. & P. Railroad*, Tenth Circuit, 171 F. (2d) 377, indemnity was allowed in favor of a railroad, which had settled an injured employee's claim, on findings in the court below that the negligence of the Government's employees in placing material near the track caused the injury and that the railroad had not been negligent in failing to discover it; and, further, that the railroad's settlement of the claim was reasonable.

In *Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co.*, 343 Ill. App. 148, 98 N. E. (2d) 783, the trucking company negligently parked a truck so close to a side-track one of the railroad's employees was injured by it. The railroad settled the employee's Federal Employers' Liability Act claim and sued the trucking company for indemnity. In holding that the complaint was good against demurrer, the court said, in pertinent part:

"The vast growth of negligence law has markedly changed the characteristics of negligence actions. Legal negligence no longer embodies a concept of misbehavior just short of the criminal or the immoral. The courts have, therefore, had to find a way to do justice within the law so that one guilty

of an act of negligence—affirmative, active, primary in its character—will not escape scot-free, leaving another whose fault was only technical or passive to assume complete liability. In dealing with the question, the courts have had before them the problem stated in *Booth-Kelly Lumber Co. v. Southern Pacific R. Co., supra,* that in practically all cases the indemnitee has himself been guilty of legal negligence. This led to some confusion in terms used. That the vocabulary of negligence law is not adequate for our day is apparent from the contemporary writings on the subject. Thus in these decisions the courts say plaintiff (indemnitee) was without fault or that he was only technically negligent even though the liability was based on legal negligence. *What is meant is that plaintiff by act of defendant was made liable for failing to discharge a responsibility even though he, plaintiff, was not guilty of any active negligence.* In the instant case plaintiff has alleged in its complaint that it was not negligent and defendant says that if it were not negligent, then it was only a volunteer when it made payment to the injured switchman. From the facts set forth in the second amended complaint and the legal situation which confronted plaintiff we understand clearly that what it meant was that the railroad was guilty of only passive technical negligence and that the active and primary negligence was that of defendant in placing its truck where it was a danger to plaintiff's employees. Examined in this light the second amended complaint states a case." (Italics added). 98 N. E. (2d) 787.

In *Kansas City Southern Railway Company v. Payway Feed Mills, Inc.,* Mo. Sup., 338 S. W. (2d) 1, another successful suit by a railway company for indemnity for the amount of its settlement of an injured employee's Federal Employers' Liability Act claim, the defendant contended that its motion for a directed verdict should have been granted. We quote from the opinion of the court:

"* * * Before discussing the particular points upon which that contention is based we deem it appropriate to consider

generally the principle of indemnity here involved and its application to the facts of this case. * * * This court has heretofore stated that 'It is the general rule, where one person has been exposed to liability and compelled to pay damages on account of the negligence of another, the first has a right of action against the other for indemnity where the parties are not *in pari delicto*. In cases where one party creates the condition which causes injury and the other does not join therein but is exposed to liability on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply.' *Barb v. Farmers Insurance Exchange,* Mo. Sup., 281 S. W. 297, 304. It has often been said that the negligence of the party responsible for the dangerous condition is active and primary while the negligence of the other is passive and secondary. The principle of indemnity stated in the *Barb* case has been codified and restated as follows: [Quoting Restatement of the Law of Restitution, Section 95, which will be found in quotation from Booth-Kelly Lumber Company, *supra.*] * * *.

"We think the factual situation presented in the case at bar is a classic example of the type of case the authors had in mind in formulating Restatement, Section 95, *supra*. A jury could reasonably have found from the evidence (1) that defendant had created a dangerous situation in permitting its movable dock to be so located that there was not sufficient clearance (although having been previously notified by plaintiff to maintain a certain minimum clearance) so that plaintiff's employee Price could safely pass said dock while riding upon a boxcar in furtherance of a switching operation and was thus guilty of active negligence, and (2) that plaintiffs were liable to Price under the F. E. L. A., supra, for their passive negligence in failing to discover the position of said dock and move it so as to provide sufficient clearance or to have warned Price and thereby avoided his injury." 338 S. W. (2d) 5, 6 and 7.

The last paragraph of the above quotation could easily be paraphrased to fit the allegations of this complaint.

See also *Newsome v. Surratt,* 237 N. C. 297, 74 S. E. (2d) 732, 734 (1953); *Central of Ga. R. Co. v. Macon Ry. & L. Co.,* 140 Ga. 309, 78 S. E. 931, 932 (1913); *Advanced Refrigeration v. United Motors Service,* 69 Ga. App. 783, 26 S. E. (2d) 789, 792 (1943); *Suwannee Valley E. Co-op v. Live Oak, P. & G. R. Co.,* 73 So. (2d) 820 (Fla. 1954); and *St. Louis-San Francisco Railway Co. v. United States,* Fifth Circuit, 187 F. (2d) 925.

No case has been called or come to my attention in which a railroad's claim to indemnity for sums paid in settlement of a Federal Employers' Liability Act claim, under circumstances similar to those involved here, has been denied. Many other authorities could be quoted. Without further prolonging this opinion, I close this discussion of some of the authorities with the following quotation from *McFall v. Compagnie Maritime Belge (Lloyd Royal) S. A.,* 304 N. Y. 314, 107 N. E. (2d) 463:

"* * * Where several tort-feasors are involved an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act. Whether negligence is passive or active is, generally speaking, a question of fact for the jury." 107 N. E. (2d) 471.

The facts inferable from the allegations of this complaint fit the letter and spirit of the just rule by which indemnity is allowed to a railroad company which has become liable to an employee injured by a dangerous condition created by the defendant, absent active negligence on the part of the company, as distinguished from passive negligence in failing to discover such condition. To apply the ordinary rule denying contribution or indemnity between wrongdoers to this situation is unrealistic, because the rationale of the rule

(that the courts should not be open to *wrongdoers* to assist them in equalizing the burdens of their own misconduct) is inapplicable. That a railroad company may become liable to an injured employee by breach of its non-delegable duty to make an inspection to insure the safety of the place of work, without an iota of actual negligence or wrongdoing on its part, is clear under the decisions. The latest pronouncement by the United States Supreme Court, *Shenker v. Baltimore & O. R. Co.,* 373 U. S. —, 83 S. Ct. 1667, sufficiently illustrates the point. Dissenting in Shenker, Mr. Justice Goldberg characterized it as having "made the B & O the insurer of the condition of all premises and equipment, whether its own or others, upon which its employees may work."

I am in accord with the statement that cases of this type furnish classic examples of facutal situations in which justice required the formulation of rules allowing indemnity, even though the party seeking it is technically tarred with the stigma of joint tort-feasor. That such rules have been formulated by respected courts and law writers has been demonstrated. I would reverse the judgment below and give the plaintiff an opportunity to prove the case alleged in its complaint.

BUSSEY, J., concurs.