McCAIN MANUFACTURING CORPORATION, Appellant,

v.

ROCKWELL INTERNATIONAL CORPORATION, Appellee.

No. 82–1111.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 14, 1982.

Decided Dec. 23, 1982.

Susan M. Smythe, Charleston, S.C. (Buist, Moore, Smythe & McGee, Charleston, S.C., on brief), for appellant.

Robert A. Patterson, Charleston, S.C. (Thomas J. Wills, Barnwell, Whaley, Stevenson & Patterson, Charleston, S.C., on brief), for appellee.

Before SPROUSE and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This appeal is from a grant of summary judgment in favor of defendant Rockwell International Corporation, from whom plaintiff McCain Manufacturing was seeking indemnity. By this suit, McCain hoped to recover $64,000 it had spent in settling a personal injury suit brought against it by one Dale Morris.

## I.

In 1975, McCain Manufacturing Corporation was in possession of a "Brackett Trimmer," a paper cutting machine with a guillotine blade. McCain contracted to sell the trimmer to the employer of Dale Morris, and simultaneously agreed to repaint, refurbish and place it in safe operating order prior to delivery. Because McCain was unfamiliar with Brackett Trimmers, it contracted with Rockwell International, the manufacturer of the almost forty year old machine, to obtain electrical diagrams necessary properly to rewire the trimmer. Rockwell was also to assist in going over the machine and seeing that it was put into safe operating order. To that end, Rockwell sent one of its factory experts to examine the trimmer after McCain had completed the rewiring. At that time, Rockwell's expert added certain safety features to the machine and corrected various problems. When Rockwell had completed its work on the trimmer, McCain installed it at Dale Morris's workplace in Charleston, South Carolina.

The trimmer had two separate electrical circuits. One, of 220 volts, provided power to the motor which actuated the blade, while the second circuit, of 110 volts, energized the control mechanisms. With the control circuit on and the main motor circuit off, it was possible to actuate the clutch so that it would become engaged and remain engaged. In that event, energizing the main motor circuit would cause an unexpected cycling of the cutting blade. That appears to have been what happened when Dale Morris lost his hand.

The problem had been recognized by Rockwell, or its predecessor, in 1950, for trimmers manufactured after that were provided with a "safety dog" which insured disengagement of the clutch in those circumstances. Machines manufactured in 1968 and later were provided with a second safety device, an interlock between the two circuits, so that one could not be energized without energizing the other.

When this trimmer was refurbished in 1975, Rockwell's factory expert corrected some problems and provided one safety device, but provided neither of the available safety devices to prevent unexpected cycling of the blade. Nor did he tell McCain of the risk of harm posed by the machine without such devices.

## II.

In 1979, Morris sued McCain and Rockwell for the injury he had suffered. He asserted causes of action against both defendants for breach of warranty, negligence and strict liability. McCain cross-claimed against Rockwell for indemnity.

At the close of Morris's case, Rockwell settled with Morris for $75,000. As part of that settlement, Morris agreed to pursue his action against McCain in negligence only. The trial judge then dismissed, without prejudice, McCain's cross-claim for indemnity against Rockwell.

The trial then continued on the issue of McCain's negligence. Before submission of the case to the jury however, McCain, fearing the possibility of a large verdict against it, settled with Morris for $64,000.

## III.

In the present action, McCain sued Rockwell to recover the $64,000 it expended in its settlement with Dale Morris. Although

McCain's complaint sounded primarily in indemnity, McCain also claimed against Rockwell for breach of contract and warranty arising from Rockwell's alleged unworkmanlike assistance in the refurbishing work. The trial judge, believing that the only relevant factual issues in this indemnity suit already had been developed fully in Morris's suit, limited further discovery by McCain.

In granting summary judgment for Rockwell, the trial judge characterized McCain's claim as one for common law noncontractual indemnity. In order to recover on such a theory in South Carolina, the trial judge found the would-be indemnitee must show (1) that it had made the payment for which it was seeking indemnification under legal compulsion, and (2) that no negligence of its own had contributed to the injury. The trial judge found that McCain, as a matter of law, could not make the required showing because "under the facts of this case, even as alleged by the plaintiff McCain, the two essential elements of recovery . . . are mutually exclusive." If there was a legal obligation to make payment to Dale Morris, who alleged only negligence against McCain after the Rockwell settlement, that must be because there was some negligence chargeable to McCain. Absent such negligence, that payment to Morris was a gift and McCain a volunteer. Either way, reasoned the trial court, McCain's claim for indemnity must fail.

IV.

In *Atlantic Coast Line Railroad v. Whetstone,* 243 S.C. 61, 132 S.E.2d 172 (1963), relied upon by the trial judge, the Supreme Court of South Carolina held that mere joint tortfeasors have no action for indemnity as against one another. Thus, from *Whetstone* derives the rule that one prerequisite for recovery of tort indemnity, in the absence of an express agreement stating otherwise, is a showing that no negligence of the would-be indemnitee joined with the indemnitor's to cause the injury. *Cf. Addy v. Bolton,* 257 S.C. 28, 183 S.E.2d 708 (1971) (reasonable attorneys' fees incurred in re-

sisting claim indemnified against may be recovered by person whose personal negligence did not contribute in causing the injury). And although the *Whetstone* decision indicates that no distinction should be made between active and passive negligence on the part of the would-be indemnitee, that conclusion appears to us rooted in the fact that there was no antecedent legal relation between the would-be indemnitee and the indemnitor.

*South Carolina Electric & Gas Co. v. Utilities Construction Co.,* 244 S.Ct. 79, 135 S.E.2d 613 (1964), confirms this reading of *Whetstone;* the court there held 'that the *Whetstone* decision is not applicable in cases where a contractual or legal relationship exists between joint tortfeasors. *Id.* at 88, 135 S.E.2d at 617. *SCE & G* arose when a pedestrian suffered injuries in a fall caused by an uneven sidewalk. The plaintiff utility, charged by ordinance with the duty to restore to safe condition areas in which it did work or made installations for the supplying of power, settled with the pedestrian for $36,000. SCE & G had engaged a construction contractor to make sidewalk repairs which, by law, the power company was required to make. The repairs were improperly made, creating a depression which caused the injury to the pedestrian. The power company sought to recover against the construction contractor on theories of an express indemnity agreement and upon such an agreement implied by law. Notwithstanding that the plaintiff had failed to discover and correct the depression in the sidewalk, recovery by SCE & G against the contractor, on either or both theories, was allowed.

In the present case, the trial judge applied the rule of *Whetstone,* apparently on the assumption that no contract or legal relation existed between Rockwell and McCain such as would implicate the holding of *SCE & G.* Plaintiff's complaint, however, alleges an express and an implied contract the breach of which would entitle plaintiff to indemnification.

We believe plaintiff was entitled to explore through discovery and to adduce at

trial evidence that would show a legal or contractual relation between plaintiff and defendant.

█ If such a contractual relation with Rockwell can be proved by McCain, *SCE & G* would appear to permit McCain to recover. It is true that *Whetstone* did not differentiate between active and passive negligence in its denial of indemnification. It is equally true that McCain's settlement with Morris requires us to assume that McCain is chargeable with some negligence. From the record it appears that any negligence chargeable to McCain was merely passive. McCain failed to discover defects created or left in the machine as a result of Rockwell's acts or omissions in the refurbishing work or as a result of errors or deficiencies in the wiring diagram provided by Rockwell. We conclude that if the contractual relation with Rockwell alleged by McCain can be proved at trial, neither *Whetstone* nor *SCE & G* will permit Rockwell to set up as a bar to McCain's indemnity claim McCain's failure to discover Rockwell's negligence. Although failure to discover a defect or condition may be a bar to recovery of indemnification by a joint tortfeasor contractually and legally unrelated to the tortfeasor from whom indemnification is sought, it cannot be set up as a defense by one who contractually bound itself to the would-be indemnitee to discover and remedy such defects.

█ Moreover, it seems to us that McCain has stated a simple breach of contract claim against Rockwell sufficient to entitle it to a trial of the issues. If McCain can prove the existence of a contract with Rockwell, its breach and resulting damages, McCain would be entitled to recover some amount. The measure of damages would, of course, depend on the contract proved and the nature of the breach. McCain might prove that the full $64,000 paid in settlement to Dale Morris was recoverable as consequential damages. McCain was entitled to try this issue.

McCain also alleged that it is a third-party beneficiary of all warranties, implied or express, that arose from Rockwell's manufacture and initial sale of the Brackett Trimmer. There may have been express or implied warranties made by Rockwell of which McCain could claim some benefit. The trial judge's ruling effectively precluded McCain from proving the existence and nature of any such warranties. We believe McCain's pleading was sufficient to withstand defendant's motion for summary judgment and that plaintiff should have been permitted to adduce evidence on this issue as well.

### V.

Therefore, because the trial court erred in applying the rule of *Whetstone* without permitting plaintiff to prove a legal or contractual relation with Rockwell, and because it further erred in failing to entertain plaintiff's breach of contract and warranty claims, which presented unresolved issues of fact, we vacate, 528 F.Supp. 524, and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.