## 18188

SOUTH CAROLINA ELECTRIC & GAS COMPANY, Respondent,
v. UTILITIES CONSTRUCTION COMPANY, Appellant

(135 S. E. (2d) 613)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant,*

*Messrs. Arthur M. Williams, Jr., Cooper, Gary, Nexsen & Pruet, Frank B. Gary* and *Harold W. Jacobs,* all of Columbia, *for Respondent,*

*Messrs Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellant, in Reply.*

March 26, 1964.

Bussey, Justice.

In this action the plaintiff-respondent seeks to recover by way of indemnity, the sum of $39,000.00, interest and costs from the defendant-appellant. The controversy arose out of the following facts:

The Town of Holly Hill passed an ordinance which granted the plaintiff the electric franchise for that community. The portions of this ordinance pertinent to this controversy read as follows:

"Section 3. The poles, towers, conduits, cables, conductors, transforming stations, fittings, appliances and appurtenances shall be so constructed as not to unreasonably interfere with the proper use of the streets, avenues, alleys, ways, bridges and public places in said Town of Holly Hill and shall be maintained in a reasonably good condition and repair.

"Section 4. Whenever the Grantee shall cause any opening or alteration to be made in any of the streets, avenues, alleys, ways, bridges, or public places of said Town of Holly Hill for the purpose of installing, maintaining, operating or repairing any poles, towers, conduits, cables and other appliances, the work shall be completed within a reasonable time and the Grantee shall upon completion of such work restore such portion of the streets, avenues, alleys, ways,

bridges or other public places to as good condition as it was before the opening or alterations so made.

"Section 5. The Grantee shall hold said Town of Holly Hill harmless from any and all liability or damages resulting from the negligence of the Grantee in the construction, maintenance or operation of said poles, towers, conduits, wires, cables and other appliances."

Subsequently, on November 9, 1953, the plaintiff and the defendant entered into a written contract under which the defendant agreed to perform certain work assigned to it by the plaintiff, consisting of the construction and maintenance of transmission and distribution lines. This contract was prepared by plaintiff, or its counsel, and provided, *inter alia,* that the defendant would work as an independent contractor and not as an agent or employee of the plaintiff; that all work performed by the defendant would be done in a good, proper and workmanlike manner; and contained the following indemnity clause:

"(e) The Contractor hereby agrees to indemnify and to hold the Company harmless from any and all claims for damages to persons and/or property arising out of or in any way connected with the performance of any work covered by this contract."

In February 1955, while the aforesaid contract was in force between the parties, and pursuant thereto, plaintiff gave the defendant a work order which required defendant to remove an old pole and install a new fifty foot pole, and put two cross arms on it and a gang switch—install light fixtures and some wire attachments—and patch the sidewalk. The pole in question was located near the curb on Main Street in the Town of Holly Hill. The work was completed and accepted by the plaintiff in February 1955. The defendant, unknown to the plaintiff, improperly performed the work of repairing the sidewalk, in a manner which will be later herein more fully described. As a consequence thereof, a depression gradually developed in the patched area of the side-

walk as a result of the defective workmanship and, on June 20, 1959, a Mrs. Brant, a resident of Holly Hill, stepped into the depression, fell and was severely injured. The depression had existed for some time prior to the date of Mrs. Brant's injury.

Thereafter, Mrs. Brant brought suit against the plaintiff and the defendant for the damages caused by the injuries sustained. The plaintiff then made demand upon the defendant to take over the defense of the case on the ground that it was entitled to be indemnified by the defendant, both by reason of the express indemnity provision of the contract and a contract of indemnity implied by law. The defendant denied that it was liable either to the plaintiff or Mrs. Brant and consequently refused to do so. The parties, however, did enter into a stipulation under which, without prejudice to either, the plaintiff could settle Mrs. Brant's case for $36,-000.00, and institute such action under its indemnity agreement, or otherwise, as it might be advised to recover from the defendant. The plaintiff then settled with Mrs. Brant for the sum of $36,000.00 and in this action seeks to recover that amount plus interest and the sum of $3,000.00 in attorneys fees. No issue as to the reasonableness of either the settlement figure or the amount of attorneys fees is here involved, nor is it contended that said amounts would not bear interest if the defendant be liable at all.

The plaintiff sought to recover under both the express indemnity agreement and on the theory of an indemnity agreement implied by law. The defendant by answer denied that it was liable under either theory.

The case was referred by consent to the Honorable Harry M. Lightsey, Master in Equity for Richland County, who, after taking testimony, filed his report therein and recommended that plaintiff have judgment under both theories against the defendant in the full amount demanded. The circuit judge, upon hearing exceptions of the defendant to the master's report, confirmed and adopted the factual findings

of the master and held that the plaintiff was entitled to indemnification by the defendant by reason of the express contract of indemnity and ordered judgment for the full amount prayed for. The circuit judge did not pass on exceptions to the master's report with respect to the finding that the defendant was also liable to the plaintiff under a contract of indemnity implied by law. On appeal, defendant contends that the circuit judge erred in holding plaintiff entitled to recover under the express contract of indemnity, but raises no question as to the amount of the recovery, if plaintiff be entitled to recover. The plaintiff urges as an additional sustaining ground that it is also entitled to recover by reason of a contract of indemnity implied by law.

The facts and circumstances surrounding the repair of the sidewalk by the defendant, as found by the master, confirmed by the circuit judge, and not excepted to, were as follows:

The defendant had to make an opening in the concrete sidewalk which was four to five inches thick, immediately adjacent to the old pole; dig a hole and insert a new pole. It then had to remove the old pole, fill in the hole from which it was taken and repair the sidewalk. The defendant filled the area of the sidewalk necessary to be repaired with soil to within one and a quarter to one and three-quarters inches of the sidewalk surface. It then filled in the remaining void with a mortar patch which consisted of one part cement and seven parts topsoil taken from an adjacent alley.

The workmanship was inferior and the topsoil taken from the alley unsuitable as a mixing agent, producing a mortar of a very low adhesive quality, entirely unsuited for sidewalk purposes. Such, however, could not have been determined from a visual inspection by other than a concrete expert at the time of inspection and acceptance by the plaintiff. (It is not contended here that plaintiff did not make a proper and adequate inspection.) A normal sidewalk mixture consists of one part cement, two parts builders sand, and four parts gravel, which after being soaked for twenty-four to forty-

eight hours should withstand fifty tons of pressure. To quote in part from the master's report:

"The low percentage of cement, the organic material in the topsoil mixed with it, and the excessive water necessary to obtain the proper consistency as used by the Defendant, on the other hand, created a mortar which, even when dry, easily crumbled under thumb pressure. As a result, normal foot trafic, over the years, gradually eroded the patched surface. In addition, there was apparently some settling of the soil underneath the patch by reason of improper tamping, which, coupled with the reduced strength of the patched area because of its thinness, further aggravated the defect."

Upon completion of the work, from all visual appearances, the same appeared to have been done in a proper and workmanlike manner, and so appeared to the plaintiff's employee who inspected and accepted the same. The evidence before the master from several witnesses reflected that the depression in the sidewalk was noticeable or observable for quite some time, as much as a year, before Mrs. Brant's injury. These witnesses, for one reason or another, were unusually familiar with the immediate area of the depression. Two of them were ladies who had sprained their ankles by stepping in the depression, one such occurrence being about three weeks prior to the injury of Mrs. Brant, and the other being about a year prior thereto. It does not appear that either of these ladies notified either the Town of Holly Hill or the parties hereto of their respective experiences with the depression until after Mrs. Brant was seriously injured.

The location of the depression was diagonally across the street from the office of the plaintiff in the Town of Holly Hill, and not very far distant therefrom with the result that various employees of the plaintiff, including repairmen, had the same opportunity to observe the depression in the sidewalk which gradually occurred over a period of time, as did members of the public generally. On the other hand, it was found as a fact and not excepted to that the plaintiff had no

actual knowledge of either the depression, or the faulty workmanship which caused it prior to receiving a report of the injury to Mrs. Brant.

There is no issue involved here as to the liability of the plaintiff to Mrs. Brant for her injuries under the terms of the franchise ordinance under which plaintiff was operating. The defendant simply and only contends that it is not liable to reimburse the plaintiff by virtue of either the express indemnity contract or a contract of indemnity implied by law. One of the principal contentions of the defendant is that a contract of indemnity does not bind the indemnitor to indemnify the indemnitee against liability incurred in whole or in part by negligence of the indemnitee, unless the contract of indemnity so expressly provides, citing, among other authorities, *Murray v. Texas Co.,* 172 S. C. 399, 174 S. E. 231. It is further contended that under the evidence here the plaintiff was negligent in failing to discover and correct the depression in the sidewalk, caused by the defendant's negligence, long before the injury to Mrs. Brant, and that such negligence on the part of the plaintiff relieved the defendant, as a matter of law, of any obligation to indemnify under its contract or otherwise.

This case was heard by both the master and circuit judge before the decision of this court in *Atlantic Coast Line R. Co. v. Whetstone,* 243 S. C. 61, 132 S. E. (2d) 172. As pointed out in the dissenting opinion in that case, there is substantial authority for the proposition that where the only delict of one joint tortfeasor is the failure to discover or correct a defect or dangerous condition caused by the negligence of his joint tortfeasor, the failure to discover the defect constitutes only passive negligence as opposed to active negligence on the part of the one who created the condition, and that the one guilty of only passive negligence can recover indemnity from the one guilty of active negligence. The majority opinion in that case, however, rejected the theory of the distinction between passive and active negligence, at least

in cases where there was no contractual or legal relationship between the joint tortfeasors.

Since the master and the circuit judge did not have the benefit of the Whetstone decision, it is not surprising that the report of the master and the decree of the circuit judge both discussed the distinction between "active" and "passive" negligence and referred to any negligence on the part of the plaintiff here as being "passive" as opposed to the "active" negligence of the defendant. The briefs òf counsel also contain a discussion of such distinction as well as argument as to the effect on the instant case of the *Whetstone case,* the opinion in which was filed before the briefs of counsel were completed.

In our view of the instant case, however, the decision in the *Whetstone case* is not at all controlling for the reasons hereinafter set forth. We are not even called upon to decide whether a distinction between "active" and "passive" negligence should, or should not, be recognized in a case where there is a contractual or legal relationship between two joint tortfeasors, the holding of that case going no further than that the distinction would not be recognized in a case where no legal relationship between joint tortfeasors existed.

Here the plaintiff was chargeable as a matter of law, by virtue of the franchise ordinance, with the negligence of the defendant in improperly repairing the sidewalk and failing to restore the same to its prior condition. We see no evidence in this case, however, of any other negligence on the part of the plaintiff. The breach of a legal duty is essential to negligence and such legal duty is that which the law requires to be done or forborne with respect to a particular individual or the public at large. Without a violation of such a legal duty, there is no negligence. *Kershaw Motor Co. v. Southern R. Co.,* 136 S. C. 377, 134 S. E. 377, 47 A. L. R. 858.

Had the defendant properly performed its work and restored the sidewalk to its former condition, there would have been no legal duty upon either the plaintiff or the defendant

to inspect or maintain the sidewalk thereafter. We are not here concerned with the extent of the legal duty which would have arisen had the plaintiff had actual knowledge of the defective condition, since it is undisputed that the plaintiff did not have actual knowledge thereof. Neither are we necessarily concerned with the extent of the legal duty of the defendant owed to Mrs. Brant or other members of the public, the defendant having full knowledge of its delict and the inherently dangerous condition it had left in the sidewalk which it knew was constructed and maintained for the use of the public.

Since, however, the plaintiff had no knowledge, what was its duty, if any, to the public with respect to the inspection of the sidewalk from time to time and the correction of the condition caused solely and only by defendant's delict? It must be borne in mind that the plaintiff, certainly as far as the record here shows, endeavored to secure the services of a reliable and competent contractor to do the work, and, moreover, properly inspected said work before its acceptance. Having no knowledge of the defective condition created by the defendant and no reason to believe that the work had not been properly done, we know of no rule of law, and no authority has been cited to us, which would, under the circumstances, impose upon the plaintiff any legal duty to inspect the sidewalk in the Town of Holly Hill, from time to time, for the purpose of discovering a defect which it had no reason to believe existed.

Its duty, rather, was to restore the sidewalk to as good condition as it was before, and to do the work in a proper and careful manner. Hence, the only negligence chargeable to the plaintiff under the facts of this case was the negligence of the defendant itself, the plaintiff being cast in damages as a matter of law and made responsible for the acts of the defendant.

Had the defendant been merely an agent or servant of the plaintiff, as opposed to an independent contractor, and the plaintiff cast in damages solely as a result of the acts of the

agent, it is quite clear that the plaintiff could have recovered indemnity from the defendant without a contract of indemnity. *Jenkins v. Southern R. Co.,* 130 S. C. 180, 125 S. E. 912; *Bell v. Clinton Oil Mill,* 129 S. C. 242, 124 S. E. 7; *Ilderton v. Charleston Consol. Ry. & Lighting Co.,* 113 S. C. 91, 101 S. E. 282. We see no apparent reason why the basic rule of law would be any different because here the defendant happened to be an independent contractor rather than an employee, particularly since the indemnity contract bound the defendant to the very same liability imposed by law upon a mere employee. Indeed, it could well be argued that there is all the more reason for the application of the rule with respect to an independent contractor since an independent contractor is not subject to the same supervision and control as is an employee.

The only negligence of the plaintiff in this case being that of the defendant itself, hence, constructive negligence or negligence imputed by operation of law, we think it makes little difference whether the plaintiff's action was based on a legally imposed liability of the defendant or upon the express indemnity contract, as they both, under the facts of this case, imposed the same ultimate liability upon the defendant.

The defendant contends, among other things, that the indemnity contract having been prepared by the plaintiff, it should be strictly construed against the plaintiff and favorably to the defendant, and that so strictly construed, the contract would not cover liability which arose more than four years after the performance and acceptance of the work, unless a provision to that express effect had been included in the contract. The contract was very broad and comprehensive in its terms and bound the defendant to indemnify and hold harmless the plaintiff from any and all claims for damages to persons or property "arising out of or in anyway connected with the performance of anv work covered by this contract."

The facts of this case show without any question, that the claim for damages to the person of Mrs. Brant arose directly out of the faulty performance of the work by the defendant and without even any intervening or independent negligent act of the plaintiff, as opposed to the negligence of the defendant imputed to the plaintiff.

Under any interpretation of the contract, strict or liberal, we think the language used clearly includes the instant case and, as above pointed out imposed upon the defendant nothing more than the liability, well established and existing as a matter of law, with respect to an employee under similar circumstances.

The defendant, relying upon the case of *Clyde v. Sumerel*, 233 S. C. 228, 104 S. E. (2d) 392, contends that any liability on its part to either Mrs. Brant or the plaintiff terminated upon its completion of the work and the acceptance thereof by the plaintiff. The cited case is authority for the proposition that generally a contractor is not liable to a third person, receiving injury or damage as a result of negligent construction work, after the completion and acceptance thereof by, and the return of the premises to, the owner. The defendant argues that, at least, the contract in this case should be construed in the light of the law of the cited case and that it be held, therefore, that the defendant is not liable to the plaintiff because of an occurrence some four years after the acceptance of the work. Defendant further argues that since it was not liable to Mrs. Brant, again relying on the *Clyde case,* it could not be held liable to plaintiff.

In our view, the *Clyde case* is not at all in point with the instant case. There, the work was completed, accepted and the premises returned to the exclusive control of the owner and the dangerous condition which existed was open, patent and obvious, if not at the time of acceptance, immediately thereafter. Here, the premises were not returned to the plaintiff nor under the exclusive or any other

degree of control of the plaintiff. The sidewalk, both before and after the work done by the defendant, was under the control of the Town of Holly Hill. The defective and dangerous situation knowingly created by the defendant was not only not patent and obvious, but was done in such a manner as to keep the defect from becoming apparent for a long period of time.

The conduct of the defendant with respect to the repair of the sidewalk was not only grossly negligent, but, it seems to us, clearly willful. The defective and potentially dangerous condition in the sidewalk was completed and finished in such a manner as to avoid ready detection and to at least border upon fraud and deceit. We do not think it can be soundly argued, under the circumstances, that the defendant should not be held accountable for its conduct merely because such did not result in serious injury to anyone for more than four years after the delict. Certainly, a contractor could not absolve itself from liability for an occurrence, happening in the course of the work or immediately thereafter, by concealing the fact that it had negligently or willfully created a dangerous condition. This being true, it soundly follows that a contractor should not be allowed to absolve itself from liability for an injury occurring at a much later date, by the simple expedient of more thoroughly concealing or covering up the defective and potentially dangerous condition which it created, so as to postpone any injurious result.

To allow such would tend to place a premium on the art of deceit. The greater the deceit, the longer the postponement of any injurious result, and the greater the cloak of immunity for the perpetrator of the deceit.

For the reasons set forth, we conclude that the lower court correctly granted judgment in favor of the plaintiff.

Affirmed.

BRAILSFORD, J., concurs.

TAYLOR, C. J., and MOSS and LEWIS, JJ., concur in result.

LEWIS, Justice (concurring).

I agree that the judgment of the lower court should be affirmed but upon somewhat different grounds from those stated in the opinion of Justice Bussey. His opinion contains a complete statement of the issues and the facts, and repetition in detail here is unnecessary.

The plaintiff and the defendant entered into a written contract whereby the defendant agreed to perform certain work for the plaintiff. It was expressly agreed that the defendant would perform the work in a good, proper and workmanlike manner, and that the defendant would indemnify and hold the plaintiff harmless "from any and all claims for damages to persons and/or property arising out of or in any way connected with the performance of any work" covered by the contract. The defendant undertook to perform certain work for the plaintiff under the contract but failed to do it in a workmanlike manner. Because of the negligent manner in which the defendant performed the work, a Mrs. Brant suffered personal injuries, for which the plaintiff was required to pay the sum of $36,000.00. The record abundantly sustains the findings of the lower court that the defendant failed to perform work under its contract with the plaintiff in a workmanlike manner and that the plaintiff has been damaged as a result thereof in the amount sought in this action.

This action is not based upon any claimed right of indemnity from a joint tort-feasor. Rather, it is an action to recover, under the foregoing written indemnity agreement, damages sustained by the plaintiff from the failure of the defendant to perform its express contractual obligation to do the work undertaken in a proper manner.

Since liability here is bottomed upon the contractual obligation of the defendant to the plaintiff, the general rule, adopted in the recent case of *Atlantic Coast Line Railroad Company v. Whetstone,* 243 S. C. 61, 132 S. E. (2d) 172, that there can be no indemnity among mere joint tort-feasors,

is inapplicable. Therefore, we are not here concerned with the respective liabilities of the plaintiff and the defendant to the injured party, Mrs. Brant, and may assume that they were joint tort-feasors. Our inquiry concerns solely the rights and obligations of the plaintiff and defendant under the written indemnity contract.

Under the contract, the defendant warranted that the work would be done in a proper manner. The defendant failed to perform the work as it warranted and solely created the condition out of which the injuries to Mrs. Brant arose. Clearly, the claim for damages here arose out of, and was connected with, the improper work done by the defendant while working for the plaintiff under the contract.

The defendant argues, however, that it should be relieved of any obligation to indemnify the plaintiff because the plaintiff failed to inspect and discover the faulty work of the defendant before Mrs. Brant received her injuries about four years later. As between the plaintiff and the defendant, the failure of the plaintiff, under the facts of this case, to discover and correct the defendant's breach of contract cannot excuse such breach and defeat the claim of the plaintiff. See: *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation,* 350 U. S. 124, 76 S. Ct. 232, 100 L. Ed. 133. The defective and potentially dangerous condition of the premises, resulting from the faulty work of the defendant, was not subject to detection by reasonable inspection at the time of the completion of the job. Therefore, there was no acceptance of the work by the plaintiff so as to relieve the defendant of its contractual obligations. The nature of the work done by the defendant was such as to cause the dangerous condition in the premises to result at a later date and, therefore, postpone any injurious result from the failure to perform the work as agreed. The plaintiff at no time, prior to the injury of Mrs. Brant, knew of the faulty work of the defendant or the dangerous condition which resulted therefrom. Under the circumstances here, the fact that damage from the faulty

work did not result until about four years later does not relieve the defendant of its contractual obligation to indemnify the plaintiff.

TAYLOR, C. J., and MOSS, J., concur.