SOUTHERN RAILWAY COMPANY, a corporation, Appellee,

v.

SPRINGS MILLS, INC., a corporation, Appellant.

SOUTHERN RAILWAY COMPANY, a corporation, Appellant,

v.

SPRINGS MILLS, INC., Appellee.

Nos. 79–1320, 79–1335.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1980.

Decided July 10, 1980.

Robert R. Carpenter, Rock Hill, S. C. (Roddey, Carpenter & White, Rock Hill, S. C., on brief), for appellant/cross-appellee.

Emil W. Wald, Rock Hill, S. C. (Spencer & Spencer, P. A., Rock Hill, S. C., on brief), for appellee/cross-appellant.

Before FIELD, Senior Circuit Judge, and HALL and PHILLIPS, Circuit Judges.

K. K. HALL, Circuit Judge:

This diversity case arises in connection with the injury of a railroad employee on a spur line which runs into a Fort Mill, South Carolina, plant owned by appellant Springs Mills, Inc. Appellant raises the single issue whether it was required, under a spur track agreement, to indemnify Southern Railway Co. [the Railway] for loss occasioned by the negligence of the Railway. The district court held that a supplemental indemnity provision to the agreement required appellant to bear the risk of this accident, regardless of fault, and ordered Springs Mills to reimburse the Railway for payments made to the injured employee under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* [FELA] and for medical and other expenses. We affirm.

In 1940, appellant and the Railway entered into contract by which the Railway agreed to construct, maintain and operate a private industrial track servicing Springs Mills' plant. Springs Mills agreed to make necessary arrangements to accommodate the track and, in paragraph 5, agreed to provide clearance of ten feet on each side of the track center line. In paragraph 6 of the agreement Springs Mills promised to indemnify the Railway against any damage resulting from the negligence of Springs Mills in and about the spur track, and against all claims for loss or damage by fire communicated by locomotive engines or trains of the Railway to certain buildings and property.

In 1958, the parties amended the 1940 agreement to allow for the construction of a shed which would encroach into the clear space required by paragraph 5 of the original agreement. The amendment further provided:

The party of the second part will, moreover, indemnify and save harmless the Railway Company from and against the consequences of any loss of life, personal injury, or property loss or damage which may be caused by, result from, or arise by reason of or in connection with, any limited or restricted clearances for said industrial track.[1]

On May 8, 1971, a train consisting of one engine and two cars backed into the plant area. It was manned by an engineer, a conductor, a flagman and a brakeman. To allow the train to enter into Springs Mills' yard, the flagman had to open a gate which could then be secured in an open position by means of a lockback device.

The flagman opened the gate but neglected to secure it. The train backed through the gate and coupled with two cars, and the flagman and brakeman attended to various duties and then walked to the back of the train. The brakeman, William Babb, positioned himself on the rear ladder of the fourth car, facing forward. As the train moved slowly out of the plant, he looked out from behind the car and was struck by the gate. He fell to the ground and his foot was crushed under the wheel of the train.

The Railway settled the injured brakeman's FELA claim for thirty-nine thousand dollars, plus medical expenses of approximately four thousand dollars. Springs Mills refused to take part in the negotiations or resolution of the claim, and the Railway brought this action for indemnification under the contract.

It was stipulated that the fence post to which the offending gate was attached was 7½ feet from the track center line. The car on which the injured man was riding was 10'6" wide—extending 5'3" on each side of the track center line. Thus, had the gate been locked back there would have been a 2'3" space between the train and the post. The district court found that the brakeman's injury was proximately cause by the

1. This language encompasses more than the shed; it refers to "any limited or restricted clearances."

flagman's failure to secure the fence, and that the encroachment of the fence post did not proximately contribute to the injury because the brakeman was struck by the gate, and not the post.

Appellant argues that because the only negligence shown was that of the Railway employee in failing to lock back the gate, Springs Mills should not be liable absent specific language in the agreement providing for indemnification against the results of the Railway's own negligence.

Spur track agreements such as the one in this case often provide for indemnification of the negligent acts of the indemnitee even in the absence of specific language mentioning such negligence.[2] *E. g., Atlantic Coast Line R. Co. v. Robertson*, 214 F.2d 746 (4th Cir. 1944); *Brown v. Seaboard Coast Line R. Co.*, 554 F.2d 1299 (5th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Buckeye Cotton Oil Co. v. Louisville & N. R. Co.*, 24 F.2d 347 (6th Cir. 1928). The law requires only that the intention to do so clearly appear from the contract as a whole. *Buckeye Cotton Oil, supra* at 348.

The contract in this case clearly contemplated indemnification against the Railway's negligent conduct. The supplemental agreement provided that Springs Mills would indemnify against "*any* loss of life, personal injury, property loss or damage which may be caused by, result from, or arise by reason of or in connection with, any limited or restricted clearances. . . ." (emphasis added) This provision obviously described a type of loss which could arise from the negligence of the Railway as well as that of Springs Mills. Yet the parties agreed that Springs Mills would indemnify against *any* such loss, and we know of no public policy that would prohibit such an agreement between these parties. *Atlantic Coast Line R. Co. v. Robertson, supra* at 753.

Moreover, the special indemnity provision in the supplemental agreement would be superfluous if limited to indemnification by Springs Mills only for its own negligent acts. Paragraph 6 of the original agreement already provided that Springs Mills would "indemnify and save harmless the Railway against any and all damage resulting from the negligence of [Springs Mills], its servants and employees, in and about said industrial track, and the right of way therefor." The new provision was designed to provide for additional liability on the part of Springs Mills where the Railway's clear space has been limited or restricted.

The side track agreement in this case was entered into for the convenience of Springs Mills; it was an accommodation made by the Railway so that the industry would be able to ship its goods from its own plant rather than at the Railway's terminal. In return, the Railway could expect that Springs Mills would accommodate the track and guarantee the Railway unobstructed operating space. It also could reasonably demand that Springs Mills bear the risk of losses occurring by reason of or in connection with any limited or restricted clearances, and we think it did exactly that.

Springs Mills does not contend that this was not an injury "caused by, result[ing] from, or aris[ing] by reason of or in connection with any limited or restricted clearances for said industrial track." We think it clear that Mr. Babb's injury arose in connection with a restricted clearance and was therefore within the purview of the supplemental indemnity clause.

Accordingly, we affirm the judgment of the district court.

*AFFIRMED.*

---

2. *See generally*, Annot., 20 A.L.R.2d 711 § 4 (1951).