McCAIN MANUFACTURING CORP., Plaintiff,

v.

ROCKWELL INTERNATIONAL CORPORATION, Defendant.

Civ. A. No. 80–1266–1.

United States District Court, D. South Carolina, Charleston Division.

Dec. 14, 1981.

Susan M. Smythe, Buist, Moore, Smythe & McGee, Charleston, S. C., for plaintiff.

Robert A. Patterson, Thomas J. Wills, IV, and M. Dawes Cooke, Jr., Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for defendant.

## ORDER

HAWKINS, District Judge.

### I. THE FACTS:

The defendant in this case has moved for summary judgment. This is an action for indemnification of expenses incurred in litigation and settlement of an earlier lawsuit, entitled *Dale A. Morris v. McCain Manufacturing Corporation and Rockwell International Corporation*, C/A No. 78–715 (D.S. C.). That case arose out of an accident in which Dale Morris' hand was severed while he was operating a machine known as a "bracket trimmer," which was manufactured by Rockwell International Corporation (hereinafter Rockwell) more than thirty years ago and sold by McCain Manufacturing Corporation (hereinafter McCain) in 1975 to Morris' employer. The action was brought in this court against both McCain and Rockwell, alleging negligence, breach of warranty, and strict liability in tort.

The case was tried before the Honorable Sol Blatt, Jr., on September 10 and 11, 1979. The testimony revealed that McCain bought the used machine from a printing company located in California and, finding that the machine was in need of substantial refurbishing, requested a wiring diagram from Rockwell. The testimony further reflected that Rockwell sent a technical representative to assist McCain in rewiring the machine. After refurbishing the machine, McCain sold it to Dale Morris' employer in Charleston, South Carolina. McCain sent a representative to Charleston to install the machine and to instruct personnel, including Dale Morris, how to operate it. It appears undisputed that no representative of Rockwell was ever present in Charleston when the machine was installed and the operators instructed on its use. Dale Morris contended that he was injured when the cutting blade of the bracket trimmer cycled spontaneously after the main power switch was turned on, a propensity of the machine of which he was unaware.

Rockwell settled with Dale Morris for Seventy-five Thousand ($75,000.00) Dollars at the close of the plaintiff's case. The most significant feature of this settlement, for the purpose of the present action, was that Dale Morris agreed to abandon his strict liability and breach of warranty causes of action and proceed against McCain in negligence alone. McCain had cross-claimed against Rockwell, and Judge Blatt dismissed the cross-claim without prejudice in order to allow Rockwell to withdraw from the case. Judge Blatt then charged the jury that it must no longer consider Rockwell's role, if any, in injuring Dale Morris. "You are solely concerned now in

this particular case, your concern is, is the plaintiff going to carry the burden of proof to prove that the defendant McCain was negligent and/or reckless; that if he was negligent and/or reckless, was that conduct a contributing cause?"[1] This court finds

1. A more detailed excerpt from Judge Blatt's charge follows:

Mr. Foreman and members of the jury, we've had some developments in the case that I want to discuss with you and tell you a little more about the theory of the case. I have not been in a position to tell you the theory of the case up till now.

In a lawsuit the plaintiff can bring his case upon two, three or four, as many different theories as he can think of. Normally sometimes during the trial or certainly by the time he goes to the jury in most cases, he's got to decide what one theory he is going on because obviously from a practical standpoint it's hard enough for you to understand one, but if you were trying to decide the case based on four, five different theories and I was trying to charge the law in all of them, it would be complicated. And just like a plaintiff has an opportunity to bring his case on two or three different theories, a defendant has an opportunity to defend on several different theories, even though they may be inconsistent. Then we come to the trial of the case where we sort of narrow down the issues; and that's when I like to tell you what the case is about, the method in which we are proceeding and I think you will understand it a little more clearly.

First of all, we have had two defendants up till now, McCain and Rockwell. Now Rockwell from this time on is out of the case. You just don't concern yourselves about that. You just look upon it as though they never were in it. They are out of the case. It's no concern of yours how they got out or why they got out or what happened. In your deliberations you are not to consider that. You violate your oath if you consider Rockwell. Rockwell and why Rockwell got out. That's just something that you are not to concern yourself with during your deliberations and from here on out until the case is all over. There are all sorts of ramifications and I will be glad at that time at the end of the case to sit down and explain to you, if you want me to; but from now on until you finish your deliberations, remember one thing: Rockwell is out of the case. I am going to explain to you now how the case is narrowed down and you are to decide it on these issues and nothing else. You are not even to worry why. It's just as if they weren't here.

Now, in this case Mr. Morris is the plaintiff and McCain is the defendant. And the plaintiff contends that the defendant was negligent in placing this machine down as it was placed in individual communications. I believe it was individual communications at the time and the condition it was in; and that

that negligence was what we call the proximate cause of his injuries and damages. Now, negligence is the failure to use due care. It's doing something that an ordinary person wouldn't do or failing to do something that an ordinary person would do under similar circumstances.

So the plaintiff Morris charges that McCain was negligent in what they had to do with this machine. They also charge they were reckless.

. . . . .

Now, for a defendant to be responsible for his negligent and/or reckless act, that act has got to be a proximate cause of damage to someone.

. . . . .

Now, a person's negligence doesn't have to be the sole cause of injuries to someone in order to hold that person. If a defendant's conduct is a contributing proximate cause, there may be three or four causes of a person's injuries, but if the person being sued, if his conduct, if you determine that the person being sued, he or she or it, it in this case was guilty of negligence and/or recklessness and that that negligent and/or reckless conduct was one cause by itself that contributed to the plaintiff's injuries or one of several causes that contributed to the plaintiff's injuries as a proximate cause, then that defendant is responsible. You don't concern yourself that there may be others who likewise contributed. You are not concerned with that. You are solely concerned now in this particular case, your concern is is the plaintiff going to carry the burden of proof to prove that the defendant McCain was negligent and/or reckless; that if he was negligent and/or reckless, was that conduct a contributing cause? Maybe the sole cause or one of several, either way, of the injuries received by the plaintiff? If the plaintiff proved that, he is entitled to a verdict.

Keep in mind that it doesn't have to be the only cause so long as it is at least a cause, a proximate contributing cause.

Now, in this case McCain takes the position that they weren't negligent in any way. They deny that. They say we weren't negligent, and if anybody was negligent it wasn't us. And they say, too, and they can have this as what you might call another defense, an inconsistent defense, but the law allows it, they say we weren't negligent, but even if you found us negligent or reckless in our conduct and our conduct did contribute as a proximate cause to the plaintiff's injuries, that the plaintiff himself was likewise negligent and/or reckless and that his conduct, too, contributed as a proximate cause to his injuries and therefore he is barred from re-

that Judge Blatt's charge effectively removed from the case any issue pertaining to Rockwell's conduct and left for the jury's consideration only the question of McCain's negligence towards Dale Morris.

The trial continued, and McCain presented its defense. Before the case was submitted to the jury, however, McCain settled with Morris for Sixty-four Thousand ($64,-000.00) Dollars.

The present action was instituted by the plaintiff herein, McCain Manufacturing Corporation, to recover indemnification against the defendant Rockwell International for the amount that McCain paid to Dale Morris, together with all costs of defending the earlier lawsuit. McCain's complaint alleges negligence, breach of contract, and breach of warranty by Rockwell, all of which caused McCain to become liable to Dale Morris in the amount of Sixty-four Thousand ($64,000.00) Dollars. Under the warranty theory McCain claims to be a third party beneficiary of an implied warranty of fitness for the bracket trimmer. It is undisputed that the machine was manufactured and sold by Rockwell more than thirty years ago, and was substantially rewired after it left Rockwell's hands. In any event, McCain has not urged the breach of warranty theory before this court, and has cited no authority that would render it an intended beneficiary of any warranty under the circumstances of this case, but rather has relied upon the breach of contract and negligence theories. The factual basis for both of these theories is McCain's claim that it relied upon Rockwell's expertise in rewiring the bracket trimmer and that it was

Rockwell's negligence in providing a defective wiring diagram and the negligence of the Rockwell technician in failing to correct the defective condition in the machine that caused McCain to become liable in damages to Dale Morris. These negligent acts also constitute a breach of a contract of workmanlike performance implicit in Rockwell's agreement to assist McCain in refurbishing the machine. For the purpose of the defendant's motion for summary judgment, McCain's allegations are taken as true. *See Van Horn v. Gulf Atlantic Towing Corp.,* 388 F.2d 636 (4th Cir. 1968).

In support of its motion for summary judgment, the defendant Rockwell asserts that in conditioning its settlement with Dale Morris upon Morris' agreement to proceed against McCain in negligence only, Rockwell successfully foreclosed any liability that McCain might have to Morris except such as resulted from McCain's own negligence, for which there could be no right to indemnity. This court initially denied the motion for summary judgment due to the complexity of the factual and legal issues involved and the court's unfamiliarity with the lengthy history of this case. Through numerous pretrial proceedings, however, the court has had an opportunity to study the transcript and pleadings from the prior proceeding and has been fully briefed by counsel for both sides as to the pertinent legal issues and material facts in this case. Upon the defendant's motion for reconsideration of its motion for summary judgment, the court now finds that the plaintiff's action for indemnification must fail as a matter of law under any set of facts that the plaintiff could prove at trial.

covery. That's what the defendant McCain says.

.    .    .    .    .

Now, those are the issues that remain in the case in its present status; and as I said if you determine that the plaintiff has made out a case, that he is not barred by contributory negligence and he is entitled to damages, if the defendant's conduct was a cause, a proximate cause of the injuries, then although there may be others that you think might have helped cause the injuries, you are not entitled to that; the plaintiff is entitled to a full and complete verdict against the defendant.

As I said again, you are not to concern yourself with why Rockwell is out of the case. That's just something that is none of your concern whatsoever, none whatsoever. We will proceed on that theory and those theories, I should say, in the case. You are to consider all of this evidence that you have had to date on those theories and any additional evidence that McCain may put up, any additional evidence that the plaintiff may put up because Rockwell is out of the case.

Judge Blatt asked if there were any objections to his charge, and there were none from any party.

## II. APPLICATION OF THE LAW TO THE FACTS:

This case cannot be disposed of by the simple recitation of the well-known maxim that no right to contribution or indemnity exists among joint tortfeasors. This rule has been judicially and legislatively modified in most jurisdictions, and any generalization is thus certain to be overbroad. *See Texas Industries, Inc. v. Radcliffe Materials,* 451 U.S. 630, 634, 101 S.Ct. 2061, 2063, 68 L.Ed.2d 500 (1981). The jurisdiction of this court is founded upon diversity of citizenship, and the court must therefore look to the law of the forum state (here, South Carolina) for the resolution of the issues before it. *See Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The clearest case for allowing indemnification is where there is an express contract of indemnification. *See, e.g., Southern Ry. v. Springs Mills, Inc.,* 625 F.2d 496 (4th Cir. 1980); *Prosser, Handbook of the Law of Torts* 310 (4th Ed. 1971). It is undisputed that there was no express contract of indemnification between McCain and Rockwell; the contract upon which McCain relies is the agreement between the parties under which Rockwell would assist in the refurbishing of the bracket trimmer. This action, whether viewed as sounding in negligence or breach of contract, must therefore be viewed as a claim for common-law noncontractual indemnity.

The general rule regarding noncontractual indemnity is that a restitutionary principle is applied:

to the situation where one person discharges a liability that has been imposed on him by operation of law, but which— because of another's 'primary' fault— should have been discharged by the other. The distinction between primary and secondary liability for this purpose is not based on a mere difference in *degrees* of fault but rather on a 'difference in the *character* or *kind* of the wrongs which caused the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person.'

Where the indemnitee's liability is merely constructive, vicarious or derivative, the burden for the entire loss may be shifted to the indemnitor whose actual fault caused the injury.

*White v. Johns-Manville Corp.,* 662 F.2d 243 at 249 (4th Cir. 1981). (Citations omitted). The law in South Carolina has been stated as follows:

Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury.

*Addy v. Bolton,* 257 S.C. 28, 34, 183 S.E.2d 708, 710 (1971), quoting *Atlantic Coast Line R. R. v. Whetstone,* 243 S.C. 61, 70, 132 S.E.2d 172, 176 (1963). The right to indemnification is well recognized in South Carolina where, for example, an employer seeks indemnification from an employee whose negligence has been imputed to the employer under the doctrine of *respondeat superior,* causing the employer to be liable to a third person. *See Sky City Stores, Inc. v. Gregg Security Services, Inc.,* S.C., 280 S.E.2d 807 (1981); *Bell v. Clinton Oil Mill,* 129 S.C. 242, 124 S.E. 7 (1924).

To avail itself of the right to noncontractual indemnity, the plaintiff McCain must make essentially two showings: first, that McCain was under a legal compulsion to pay Dale Morris and was therefore not a volunteer in doing so, *see, e.g., Travelers Indemnity Co. v. Firestone Tire & Rubber Co.,* 360 F.Supp. 1328 (S.D.Ala.1973); *Aetna Freight Lines, Inc. v. R. C. Tway Co.,* 352 S.W.2d 372 (Ky.1961); *Southwest Mississippi Electric Power Ass'n v. D. B. Harragill,* 182 So.2d 220 (Miss.1966), and second, that no personal negligence on the part of McCain contributed to Dale Morris' injury, *see Foster v. Ford Motor Co.,* 616 F.2d 1304 (5th Cir. 1980) (retailer of an allegedly defective product held not entitled to indemnity from the manufacturer where the retailer was guilty of negligence beyond

merely selling the defective product); *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir. 1974).[2] In *Cyr*, the assembler of printing presses was held not entitled to indemnity from component part manufacturer where the jury's finding of liability on the part of the assembler necessarily included a determination that the assembler had a duty to inspect and improve the completed press, including the defective component part, and to discover and correct the defect. The assembler's negligence in failing to discover and correct the defect was active negligence such that its liability was not "only passive or vicarious." *Id.* at 1155. This court finds summary judgment for the defendant warranted because under the facts of this case, even as alleged by the plaintiff McCain, the two essential elements of recovery set forth above are mutually exclusive.

■■ As part of the settlement agreement between Rockwell International and Dale Morris, Morris was required to abandon all theories of liability against McCain except for liability based upon McCain's own negligence. This agreement is clearly reflected in Judge Blatt's charge to the jury, given upon Rockwell's departure from the case. No longer was it possible for McCain to be held liable in damages to Morris by reason of Rockwell's wrongdoing. With the removal of strict liability and breach of warranty from the case, any possibility that McCain would be liable without fault as a seller of a defective product was eliminated. Under the law of South Carolina, as elsewhere, a seller who did not participate in the design or manufacture of a defective product is not liable in negligence for defective design. *See Marchant v. Mitchell Distributing Co.*, 270 S.C. 29, 240 S.E.2d 511 (1977). Nor could any negligence of Rockwell in supplying a defective wiring diagram or ineffective technical advice be imputed to McCain, because a principal is not responsible for the negligence of an independent contractor. *See Duane v.*

Pressley Construction Co., 270 S.C. 682, 244 S.E.2d 509 (1978).

This case is similar to the case of *McClish v. Niagara Machine & Tool Works*, 266 F.Supp. 987 (S.D.Ind.1967). The plaintiff, McClish, was injured while operating a press manufactured and sold by the defendant, Niagara Machine & Tool Works (hereinafter Niagara). Niagara brought a third party action against Harper J. Ransburg Co., Inc. (hereinafter Ransburg), McClish's employer, alleging among other things that Niagara had manufactured, designed, and equipped the press according to Ransburg's instructions. The court, applying the law of Indiana, granted summary judgment to the third party defendant Ransburg. The law in Indiana is that in the absence of an express contract for indemnity there can be no contribution or indemnity between joint tortfeasors. 266 F.Supp. at 989. Indemnity is allowed in favor of one whose liability to a third person is solely derivative or constructive, against one who has by his wrongful act caused such derivative or constructive liability to be imposed upon him. 266 F.Supp. at 991. The court found Niagara's allegation that it had manufactured and designed the press according to Ransburg's specifications to be contradicted by answers to interrogatories.

Assuming, however, that its allegations were true, the rule is that a builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder (manufacturer) of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury. So if Niagara did in fact rely upon Ransburg's specifications, and was justified in doing so, it would be exonerated and the question of indemnity would again be moot. If it followed Ransburg's specifications, but should not have done so in the exercise of ordinary care, then it

---

**2.** *See Addy v. Bolton*, 257 S.C. 28, 34, 183 S.E.2d 708, 710 (1971); *Atlantic Coast Line R. R. v. Whetstone*, 243 S.C. 61, 132 S.E.2d 172 (1963); *accord, Delta Engineering Corp. v.*

*Scott*, 322 F.2d 11 (5th Cir. 1963), *cert. denied*, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); *Jorae v. Clinton Crop ·Service*, 465 F.Supp. 952 (E.D.Mich.1979).

would have been guilty of concurrent negligence and no right to indemnity would exist. 266 F.Supp. at 992. McCain is in precisely the same position as was Niagara; McCain contends that it became liable to Dale Morris because of its reliance upon Rockwell's expertise in rewiring the bracket trimmer. This contention cannot be a basis for indemnity, because either McCain was justified in its reliance and could have asserted its reliance as a valid defense to Morris' suit in negligence, or it was not justified in its reliance and was therefore guilty of personal negligence.

McCain's dilemma is further illustrated by the case of *Alabama Great Southern R. R. v. Allied Chemical Corp.*, 501 F.2d 94 (5th Cir. 1974), *aff'd en banc*, 509 F.2d 539 (1975). That case arose out of a massive train derailment resulting in numerous personal injuries, which was caused by the failure of a wheel manufactured by the defendant. The plaintiff railroad company settled the personal injury claims without litigation and then sued the defendant manufacturer for indemnification. The court applied the law of Mississippi, observing that "[t]wo critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in Mississippi: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured person; and (2) it must appear that the claimant did not actively or affirmatively participate in the wrong." 501 F.2d at 98. Rejecting the railroad's argument that it could have been liable to the injured persons without actual negligence on its part, the court held as a matter of law that the railroad was either actively negligent or not liable at all. "It had the duty under Mississippi law to operate its trains in a reasonably safe manner. [The railroad] was not situated vis-a-vis any defendant in such a way (master-servant, principal-agent) as would cause it to be held liable to an injured third party without fault of its own." 501 F.2d at 102. The court concluded that in attempting to demonstrate liability to the injured persons, the railroad had proved itself guilty of negli-

gence and thereby not entitled to indemnity. The Fourth Circuit Court of Appeals was recently faced with a similar situation in *White v. Johns-Manville Corp.*, 662 F.2d 243 (4th Cir. 1981), in which asbestos manufacturers sought indemnification from the Newport News Naval Shipyard, which used asbestos products and employed the asbestos workers who sued the manufacturers after contracting asbestos-related diseases. The manufacturers claimed that the shipyard was primarily negligent for failing to warn its employees of the dangers associated with asbestos and the manufacturers' negligence was only a secondary cause of the injuries. The court found that this allegation was actually a defense to workers' claims against them rather than a basis for indemnification. "This fails to concede—indeed it negates by denying legal causation—the predicate for indemnity that some form of 'secondary' liability will have been established against the party seeking indemnity." Slip op. at 18.

Although this court has found no case which precisely duplicates the complex factual setting of the present case, the court is nevertheless of the opinion that the foregoing cases are persuasive authority in support of the defendant's position. The plaintiff has cited no case in which indemnity has been allowed, in the absence of an express contract for indemnification, to a party whose liability was based in part on its own negligence, or to a party who was found to be a volunteer in paying a claimant. In conditioning its settlement upon Dale Morris' agreement to proceed against McCain in negligence only, Rockwell succeeded in removing any chance for McCain to be held liable without fault.

■ The plaintiff urges that one basis for indemnity was left open by the terms of Rockwell's settlement: that is, that McCain could have been found "passively" negligent for failing to discover the defect that Rockwell created in the bracket trimmer, either in the original design and manufacture of the machine or later when Rockwell assisted in its rewiring. There is authority

for the proposition that the seller of a defective product who is held liable merely for failing to discover a defect may obtain indemnity against the manufacturer who created the defect. *See White v. Johns-Manville, supra,* at 249 (in a maritime context); *Restatement (Second) of Torts, Section 886B* (1965); *Prosser, supra,* at 312. *Contra, Cyr v. B. Offen & Co.,* 501 F.2d at 1155. Whatever the general rule may be, the law of South Carolina does not recognize a right to indemnification by one whose personal negligence, albeit "passive," contributed to the injury for which he has been held liable. As noted at the outset, the rule in South Carolina is that a person who is compelled to pay damages solely by reason of his legal relation to one guilty of negligence may maintain an action for indemnity against the guilty party. "But this is subject to the proviso that no personal negligence of his own has joined in causing the injury." *Addy v. Bolton,* 257 S.C. at 34, 183 S.E.2d at 710, quoting *Atlantic Coast Line R. R. v. Whetstone,* 243 S.C. at 70, 132 S.E.2d at 176. A prospective indemnitee is barred from indemnification if he was guilty of personal negligence which joined as a proximate cause of the injury to the third party; no distinction is made between active and passive personal negligence. That such a distinction is not recognized in South Carolina is reflected by the *Whetstone* case. That case grew out of an accident in which an employee of the Atlantic Coast Line Railroad Company was injured when the train on which he was riding struck a scaffolding placed on the right-of-way by the defendant, Whetstone. The railroad compensated the employee in recognition of its nondelegable duty under the Federal Employer's Liability Act to provide its employees with a safe place to work. The railroad then brought suit against Whetstone, seeking indemnity because of Whetstone's active negligence in placing the scaffold upon the right-of-way. The court held that the railroad and Whetstone were joint tortfeasors, irrespective of their comparative fault, and the railroad was therefore barred from indemnity. Justice Brailsford demonstrated in his dissent that that case presented a clear example of one party, liable to a third party only for passive negligence, seeking indemnification from one actively negligent and primarily responsible for the injury to the third party.

That a railroad company may become liable to an injured employee by breach of its non-delegable duty to make an inspection to insure the safety of the place of work, without an iota of actual negligence or wrongdoing on its part, is clear under the decisions. The latest pronouncement by the United States Supreme Court, *Shenker v. Baltimore & O. R. Co.,* 373 [374] U.S. __ [1], 83 S.Ct. 1667 [10 L.Ed.2d 709], sufficiently illustrates the point. Dissenting in *Shenker,* Mr. Justice Goldberg characterized it as having made the B & O the insurer of the condition of all premises and equipment, whether its own or others, upon which its employees may work.

243 S.C. at 82, 132 S.E.2d at 182. Justice Brailsford's observation was joined by Justice Bussey in *South Carolina Electric & Gas Co. v. Utilities Construction Co.,* 244 S.C. 79, 135 S.E.2d 613 (1964), in which the two justices acknowledged that the *Whetstone* decision had rejected any distinction between passive and active negligence under the circumstances of that case. *Id.,* 244 S.C. at 87–88, 135 S.E.2d at 616–17. It has also been noted that the *Whetstone* decision

is apparently the only United States case in which an employer has been denied his common law right to indemnity, after being liable under the FELA for failing to provide his employee a safe place to work, where his negligence was only passive and the dangerous condition was created by the active negligence of a third party.

.    .    .    .    .

The breadth of this conclusion must have been intended by the court since they expressly made one exception, "Let it be understood that our decision in nowise encroaches upon the rule that an employer has a right of action over against his employee where the employer has been made liable to a third party by reason of the employee's negligence."

*Comment,* 17 S.C.L.Rev. 423–24 (1965). This court can find no case repudiating the authority of the *Whetstone* decision as the law in South Carolina. To the contrary, *Whetstone* continues to be cited as the controlling statement of South Carolina law relating to noncontractual indemnification. *U. S. v. Seckinger,* 397 U.S. 203, 219 n.4, 90 S.Ct. 880, 889 n.4, 25 L.Ed.2d 224 (1970) (Stewart, J., dissenting); *Tatham v. Hoke,* 469 F.Supp. 914, 916–17 (W.D.N.C.1979); *Addy v. Bolton,* 257 S.C. at 34, 183 S.E.2d at 710; *Travelers Insurance Co. v. Allstate Insurance Co.,* 249 S.C. 592, 155 S.E.2d 591 (1967).

Notwithstanding the foregoing analysis of the law of South Carolina, this court is not persuaded by the plaintiff's characterization of its role as a mere conduit whose sole negligence was its passive failure to discover or correct a defect in the bracket trimmer. The transcript of the earlier trial reflects that McCain affirmatively undertook to rewire the bracket trimmer after acquiring it in trade. (Tr. at 239). This court accepts for the purpose of the pending motion for summary judgment McCain's allegation that it relied entirely upon Rockwell's expertise in rewiring the bracket trimmer. It is uncontradicted, however, that McCain was an active participant in that project and further that McCain alone undertook to install the machine. Active negligence does not become passive merely because it is framed in terms of failure to act rather than commission of an affirmative negligent act. "Certainly there is no general principle that one who has failed to turn on the lights of a parked automobile is entitled to indemnity against a driver who runs into it and injures his passenger." *Prosser, supra,* at 312. *Cf. Horton v. United States,* 622 F.2d 80 (4th Cir. 1980) (in which the Fourth Circuit Court of Appeals, applying the law of South Carolina, held that the failure of the United States Post Office to request that the City of Columbia repair a defect in the steps to the post office constituted negligence barring the right of the United States to seek indemnity from the city after being found liable to a patron who fell on the steps.). Even in

those jurisdictions that recognize a right to indemnification between one who is guilty of passive negligence and another who is guilty of active negligence, McCain's participation in the rewiring of the bracket trimmer must be viewed as an active contribution to the liability for which it now seeks indemnity.

## III. THE ROLE OF TRIAL

Should this court deny the defendant's motion for summary judgment, the trial of the case would have to be conducted under rigorous procedural restraints. In *Glover v. Johns-Manville Corp.,* 662 F.2d 225 (4th Cir. 1981), a companion case to *White v. Johns-Manville,* the Fourth Circuit Court of Appeals found that the asbestos manufacturers' noncontractual indemnity claims were barred as a matter of law because the asbestos workers' original complaints against them contained only allegations of active negligence. This decision is significant because it points out that the nature and extent of the indemnitee's liability to a third party must be determined solely by reference to the claims made by the third party against the indemnitee. It is not permissible to speculate as to other potential bases of liability for which a right to indemnification might exist. The present case might arguably be disposed of solely by a determination that Dale Morris' complaint against McCain contains no allegations of "secondary" liability. This is unnecessary, however, because the court has the benefit of the transcript of the entire case that Dale Morris presented against both McCain and Rockwell, and it is evident that Morris was pursuing McCain on the basis of McCain's own negligence and no attempt was made to show that Rockwell acted as the agent of McCain or that McCain was otherwise responsible for Rockwell's negligence. Summary judgment is a particularly appropriate vehicle for the disposition of this case, because if the case proceeded to trial McCain could not be allowed to present any testimony that might reflect a version of its liability to Morris other than what Morris proved in the previ-

ous trial. Because McCain's right to indemnity must stand or fall according to the nature of its liability to Dale Morris, any evidence pertaining to McCain's liability or lack thereof would be inadmissible unless it reflected exactly what was shown in the prior lawsuit. It is inconceivable that a trial conducted under such rigid constraints could be beneficial in developing the facts of this case.

## IV. SUMMARY:

The question before this court is whether the defendant Rockwell International succeeded in removing from the lawsuit brought by Dale Morris all possible bases for an indemnity claim by the plaintiff herein, McCain Manufacturing. Rockwell settled with Dale Morris with the agreement that Morris could proceed only in negligence against McCain. This court can find no basis upon which McCain can support its claim that it was compelled to pay damages to Dale Morris by reason of the negligent actions or breach of contract by the defendant Rockwell International or its employees. McCain could not have been liable to Dale Morris in negligence on account of Rockwell's negligent or defective design of the bracket trimmer, *Marchant v. Mitchell Distributing Co.*, 270 S.C. at 37, 240 S.E.2d at 514, and it could not have been liable on the basis of Rockwell's negligent performance of its contract to assist in the rehabilitation of the bracket trimmer, *Duane v. Pressley Construction Co.*, 270 S.C. at 683, 244 S.E.2d at 510. McCain finds itself in the position characterized by the Fifth Circuit Court of Appeals in *Alabama Great Southern R. R. v. Allied Chemical Corp.*, 501 F.2d at 102, as having to choose between Scylla and Charybdis: in meeting the burden of showing that it was legally compelled to pay damages to Dale Morris, McCain risks the hazard of proving itself a joint tortfeasor. McCain attempts to navigate this treacherous course by portraying the basis of its own liability to Dale Morris as mere passive negligence in failing to discover the effects of Rockwell's active negligence. This attempt fails both as a matter of law and a matter of fact. It fails

as a matter of law because the law of South Carolina, as reflected in *Whetstone* and *Bolton*, recognizes a distinction between active and passive negligence only where the negligence of the indemnitor has been imputed to the indemnitee by operation of law and the indemnitee is free of any personal negligence; this is not such a case. McCain's position fails as a matter of fact because even under its own allegations it was an active participant in the refurbishing, rewiring, and installation of the bracket trimmer. This court cannot indulge in the semantic exercise of converting "active" negligence into "passive" negligence merely by the expedient of describing McCain's breach of duty in negative terms.

For the foregoing reasons, it is the conclusion of this court that there remains no genuine issue as to any material fact and the defendant Rockwell International is entitled to judgment as a matter of law. The defendant's motion for summary judgment is therefore granted, and judgment shall be entered accordingly on all causes of action.

AND IT IS SO ORDERED.