**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

BEI-BEACH, LLC, Plaintiff,

v.

Mashburn Christman, JV, Lend Lease (US) Construction, Inc., f/k/a Bovis Lend Lease, Inc., and McCrory Construction Company, LLC, Defendants,

v.

Mashburn Christman, JV, Third-Party Plaintiff,

v.

Wallcraft Construction, Inc.; Alpha Insulation & Waterproofing, Inc.; Baker Roofing, Inc.; Collins & Wright, Inc.; Liberty Mutual Insurance Company; Old Republic Surety Company; Hartford Fire Insurance Co.; Travelers Casualty and Surety Company of America; The Muhler Company, Inc., and Companion Property and Casualty Insurance Company, Third-Party Defendants,

Lend Lease (US) Construction, Inc. f/k/a Bovis Lend Lease, Inc., Third-Party Plaintiff,

v.

Spann Roofing & Sheet Metal, Inc.; Travelers Casualty and Surety Company of America; Strickland Waterproofing Company; Merchants Bonding Company; Everest Reinsurance Company; Wallcraft Constuction, Inc., Old Republic Insurance Company; Madison Construction Group, Inc., Worthington Integrated Building Systems; McDowell Commercial Construction, LLC; Jollay Masonry; National Fire Insurance Company of Hartford; R.J. Kenney Associates, Inc.; Antunovich

Associates; TG Construction, LLC; Luis Benegas d/b/a Luis Trim Work; Nora Del Carmen Laos, Nora Del Carmon Lagos d/b/a Luis Trim Work; and Ovation Custom Trim, LLC, Third-Party Defendants,

McCrory Construction Company, LLC, Third-Party Plaintiff,

v.

Collins & Wright; Baker Roofing; Glasstech Inc.; Palmetto State Roofing and Sheet Metal; Strickland Waterproofing; Maiday, Inc.; and Atlas Drywall & Acoustics, Inc., Third-Party Defendants,

Spann Roofing & Sheet Metal, Inc., Fourth-Party Plaintiff,

v.

Coastal Commercial Roofing Co., Inc., and Daniel Kniffen d/b/a East Coast Improvements, Fourth-Party Defendants.

Wallcraft Construction, Inc., Fourth-Party Plaintiff,

v.

Vienamin Petresku d/b/a BT Construction, LLC, Fourth-Party Defendant,

of which Lend Lease (US) Construction Inc., f/k/a Bovis Lend Lease, Inc. is the Appellant,

and

Antunovich Associates is the Respondent.

Appellate Case No. 2019-002001

Opinion No. 5982
Heard November 15, 2022 – Filed April 26, 2023

**AFFIRMED**

Francis Heyward Grimball, of Richardson Plowden &
Robinson, PA, of Mount Pleasant, and James Atkinson
Bruorton, IV and Elizabeth Foy Nicholson, both of
Rosen Hagood, LLC, of Charleston, all for Appellant.

Michael B.T. Wilkes, of Wilkes Atkinson & Joyner,
LLC, of Spartanburg, and James Alexander Joyner, of
Wilkes Atkinson & Joyner, LLC, of Charleston, both for
Respondent.

**MCDONALD, J.:** In this construction defect litigation, Lend Lease (US) Construction, Inc. (Lend Lease) appeals the circuit court's grant of partial summary judgment to Antunovich Associates (Antunovich). Lend Lease argues the circuit court erred in (1) failing to recognize its independent cause of action for professional negligence against architect Antunovich; (2) failing to recognize the special relationship between an architect and contractor for purposes of Lend Lease's breach of warranty claim; and (3) limiting Lend Lease to a claim of equitable indemnity. We affirm.

**Facts and Procedural History**

In January 2011, Plaintiff BEI-Beach, LLC (BEI) purchased The Market Common, a 113-acre multi-use development in Myrtle Beach, from the developer, LUK-MBl, LLC (LUK). Lend Lease was the general contractor for Market Common buildings A6, A7, and A8; Antunovich, through its contract with LUK, was the architect for buildings A2, A3, A4, A5, A6, A7, and A8 (the A-Buildings).

After BEI purchased Market Common, it discovered defects and deficiencies in the A-buildings.

In October 2015, BEI sued Lend Lease and two other general contractors, alleging various construction defects and building code violations.  Lend Lease then filed a third-party complaint against Antunovich, Antunovich's principal, and several subcontractors, alleging design deficiencies and subcontractor errors.  Lend Lease's third-party action against Antunovich included claims for contribution, professional negligence, equitable indemnity, and breach of warranty of plans and specifications.

With its third-party complaint, Lend Lease filed the affidavit of licensed engineer Richard H. Moore, who opined the vinyl windows Antunovich specified for buildings A6, A7, and A8 were inappropriate for the designated wind zone design pressure requirements for Market Common's location.  In Moore's professional opinion, Antunovich breached "a design professional's standard of care" in the performance of its obligations to BEI and Lend Lease.

Antunovich moved for partial summary judgment as to Lend Lease's third-party claims for contribution, negligence, and breach of warranty.  Following a hearing, the circuit court granted Antunovich's motion, finding Lend Lease's contribution claim was premature and Lend Lease's claims for negligence and breach of warranty were "merely disguised equitable indemnity claims" subject to dismissal under *Stoneledge at Lake Keowee Owners' Association, Inc. v. Clear View Construction, LLC*, 413 S.C. 615, 776 S.E.2d 426 (Ct. App. 2015) (*Stoneledge I*) and *Stoneledge at Lake Keowee Owners' Association, Inc. v. Builders Firstsource-Southeast Group*, 413 S.C. 630, 776 S.E.2d 434 (Ct. App. 2015) (*Stoneledge II*).

In granting partial summary judgment, the circuit court rejected Lend Lease's argument that its negligence and breach of warranty claims alleged damages to Lend Lease's business and business reputation independent of the claims BEI asserted against Lend Lease; the circuit court also rejected Lend Lease's argument that it suffered business reputation damages separate and distinct from the damages recoverable through its indemnity claim.  The circuit court further found Lend Lease failed to present admissible evidence that it incurred any such business reputation damages.

Lend Lease filed a Rule 59(e), SCRCP motion as to its negligence and breach of warranty claims but did not seek reconsideration of the dismissal of its contribution claim. The circuit court denied the Rule 59(e) motion.

**Standard of Review**

"Rule 56(c) of the South Carolina Rules of Civil Procedure provides the circuit court shall grant summary judgment if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Stoneledge I*, 413 S.C. at 620, 776 S.E.2d at 429. "When the circuit court grants summary judgment on a question of law, we review the ruling de novo." *Id.* "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Id.* (quoting *Quail Hill, LLC v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010)). "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Id.* (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).

**Law and Analysis**

**I. Negligence**

Relying on *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995), Lend Lease argues the circuit court erred as a matter of law in failing to recognize a contractor's independent cause of action for professional negligence against an architect. We disagree.

In support of its negligence claims against Antunovich, Lend Lease asserted:

> The Plaintiff has alleged property damage resulting from alleged construction and design deficiencies that violate the applicable plans and specifications, applicable building codes, applicable manufacturer's instructions and generally recognized and accepted construction industry standards and good construction practices.
>
> . . . .

> Specifically as to the design professional services, [Antunovich's] actions as [they relate] to the performance of his professional obligations owed to the Owner and Contractor, constitute[ ] a breach of a design professional's standard of care and responsibilities as set forth in the Affidavit of Richard H. Moore, P.E. being filed along herewith.
>
> As a result of the Third-Party Defendants [sic] gross negligence and recklessness, Lend Lease has incurred, and will continue to incur actual damages in an amount to be determined by the court and may incur settlement costs in settling the Plaintiffs' claims, plus the costs associated with investigating the Plaintiffs' claims and defending this action as well as special and consequential damages, including damage to its business and business reputation, in an amount to be proven at trial.

In *Tommy L. Griffin Plumbing*, our supreme court explained that a "breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action." 320 S.C. at 54–55, 463 S.E.2d at 88. Often, this duty arises from a special relationship between the tortfeasor and the injured party. *See id*. at 55, 463 S.E.2d at 88 ("When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action.").

For example, South Carolina courts have permitted negligence actions against lawyers, accountants, and engineers based on their professional duties owed to plaintiffs. *Id.* at 55, 463 S.E.2d at 89. Yet, *Tommy L. Griffin Plumbing* does not hold that a contractor owed such a duty may maintain tort claims against a design professional without having suffered direct damages to support its claims. *Id.* In *Tommy L. Griffin Plumbing*, the general contractor sought indemnification but also claimed various tortious acts the defendant engineer allegedly committed directly against it during the course of the project:

> [General contractor] brought this action claiming Engineer wrongfully closed the job for nearly a month due to false allegations of OSHA violations, Engineer

made demands of [general contractor] which were not in the contract, Engineer wrote a disparaging letter to [general contractor's] bonding company, Engineer erroneously interpreted the contract to the County and [general contractor], and Engineer's false interpretations of the contract required [general contractor] to hire an expert to interpret the contract between [general contractor] and the County. . . . County refused to compensate [general contractor] for costs incurred by [general contractor] as a result of Engineer's acts.

*Id.* at 51–52, 463 S.E.2d at 86–87.

Here, Lend Lease contends Antunovich provided deficient plans and specifications (presumably to developer LUK) from which Lend Lease's claimed damages flow:

> The damages to Lend Lease included the costs and fees, including attorneys' fees, associated with the investigations and defense of the Plaintiffs claims, as well as special and consequential damages, including injury and damage to Lend Lease's business reputation and the liability for the damage to the Project building, which, according to Plaintiffs' allegations, include deterioration and failure of the building structure and systems due to the acts and omissions of the Third-Party Defendants . . . .

Lend Lease further contends it "has incurred, and will continue to incur actual damages in an amount to be determined by the court and may incur settlement costs in settling the Plaintiffs' claims, plus the costs associated with investigating the Plaintiffs' claims and defending this action as well as special and consequential damages, including damage to its business and business reputation, in an amount to be proven at trial." On appeal, Lend Lease lists the following actual damages:

> - Cost of windows purchased by Lend Lease that do not meet required wind load, which are now recommended for removal and replacement;
> - Investigative fees paid to Richard H. Moore, P.E., to analyze the project documents and determine whether the windows specified and approved by Antunovich meet

applicable building code requirements at the time of construction;
- Loss of business revenues as a result of pending construction defect claim.

Under South Carolina law, a claimant cannot maintain derivative tort or breach of warranty claims arising only from the claimant's potential liability for another party's damages and the claimant's need to defend itself in litigation; such contingent claims properly lie in indemnity. *Stoneledge I*, 413 S.C. at 622, 776 S.E.2d at 430; *Stoneledge II*, 413 S.C. at 637, 776 S.E.2d at 438. In the *Stoneledge* cases, a homeowners' association sued a general contractor and its subcontractors for construction defects at a townhome complex. *Stoneledge I*, 413 S.C. at 619, 776 S.E.2d at 428; *Stoneledge II*, 413 S.C. at 634, 776 S.E.2d at 436. The general contractor filed cross-claims against its subcontractors for breach of contract, breach of warranty, negligence, and equitable indemnity. *Stoneledge I*, 413 S.C. at 619, 776 S.E.2d at 428; *Stoneledge II*, 413 S.C. at 634, 776 S.E.2d at 436. Because the general contractor's cross-claims were contingent upon whether the plaintiff HOA prevailed against the general contractor, this court concluded the general contractor's "cross-claims arose only when it faced potential liability for Stoneledge's damages and incurred fees and costs defending against Stoneledge's lawsuit. [The general contractor's] breach of contract and breach of warranty cross-claims are nothing more than claims for equitable indemnity." *Stoneledge II*, 413 S.C. at 637, 776 S.E.2d at 438; *see also Stoneledge I*, 413 S.C. at 621, 776 S.E.2d at 429 (finding cross-claimant's negligence allegations showed Stoneledge was the party suffering damages and contractor's "injuries arose exclusively from having to defend itself in Stoneledge's lawsuit").

Like the general contractor in the *Stoneledge* cases, Lend Lease has not shown it suffered independent damages as a result of Antunovich's alleged negligence. Rather, Lend Lease's allegations and prayer for relief seek damages arising exclusively from Lend Lease's need to defend itself against a potential judgment in BEI's Market Common litigation, for which Lend Lease also seeks indemnity. Thus, in granting partial summary judgment, the circuit court properly held Lend Lease's negligence claims are not independent of its indemnity claim.

## II. Breach of Warranty of Plans and Specifications

Lend Lease next argues the circuit court erred in failing to recognize the special relationship between an architect and a contractor that would properly support a cause of action for breach of warranty of the architect's plans and specifications.

As to its breach of warranty claims, Lend Lease asserted:

> The Plaintiff has alleged multiple construction deficiencies for [the A-Buildings] against three (3) separate general contractors who each had different subcontractors working for them. The only constant variable among all buildings alleged to have deficiencies by the Plaintiff is the Architect [Antunovich].
>
> Deficiencies in the design professional services, as set forth in the Affidavit of Richard H. Moore, by [Antunovich] constitutes a breach of the warranty of plans and specifications owed by [Antunovich] to Lend Lease.
>
> As a result of the Architect's breaches of warranty of plans and specifications, Lend Lease has incurred, and will continue to incur actual damages in the amount of any money adjudged to be owed to the Plaintiff by Lend Lease, or which Lend Lease must pay Plaintiff in settlement of the Plaintiffs' claims, plus the costs associated with investigating the Plaintiffs' claims and defending this action. In addition, Lend Lease has incurred and will continue to incur special and consequential damages, including damage to its business and business reputation . . . .

Lend Lease contends it presented evidence, through Moore's affidavit, that Antunovich erred in preparing the design documents upon which Lend Lease relied in completing its work on Market Common. And, Lend Lease correctly notes our supreme court has recognized a duty owed by a design professional to a contractor, independent of contractual duties, with regard to the design or supervision of a project. *See Tommy L. Griffin Plumbing*, 320 S.C. at 55, 463 S.E.2d at 89 ("We see no logical reason to insulate design professionals from liability when the relationship between the design professional and the plaintiff is such that the design professional owes a professional duty to the plaintiff arising separate and distinct from any contractual duties between the parties or with third parties.").

However, as with the negligence claim discussed in Section I, *supra*, under the *Stoneledge* cases, Lend Lease's allegations set forth no proper independent claim

resulting from any breach of warranty by Antunovich. Instead, the allegations demonstrate BEI is the party that allegedly suffered damages, and Lend Lease's alleged injuries arise exclusively from having to defend itself against BEI's lawsuit. The damages Lend Lease seeks to recover would result only from its potential liability to BEI and from the expenses Lend Lease must incur in defending itself. Accordingly, the circuit court properly found Lend Lease's breach of warranty claims are not independent of its equitable indemnity claim.

Additionally, we agree with Antunovich that Lend Lease's argument is without merit under the *Spearin* doctrine. In *United States v. Spearin*, "considered by many to be the most significant construction law case,"[1] the United States Supreme Court explained:

> Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Thus one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil. But if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications.

248 U.S. 132, 136 (1918). Therefore, assuming arguendo that Lend Lease in fact complied with Antunovich's plans and specifications, Lend Lease cannot be held responsible if it can prove the specifications were defective, the defective specifications caused the problem, and Lend Lease relied on the defective specifications. *See, e.g., Robert E. Lee & Co. v. Comm'n of Pub. Works of City of Greenville*, 248 S.C. 84, 90, 149 S.E.2d 55, 58 (1966) ("The statement in SC-25 before quoted, that the owner had made auger borings along the pipe line route to determine the character of the subsurface materials, and that the location and logs of these test holes were shown on the plans, was a representation that the subsurface information revealed by the test hole borings had been accurately and fully disclosed on the plans. The contractor was entitled to rely upon that

---

[1] Buckner Hinkle, Jr., *Still Spearin After All These Years?*, 12 Journal of the American College of Construction Lawyers 1 (January 2018) (quoting *Bruner & O'Connor on Construction Law* § 9.1 (West 2016)).

representation; and the owner's responsibility under it was not overcome by the disclaimer clauses above quoted.").

## III. Equitable Indemnity

Lend Lease also challenges the circuit court's finding under *Stoneledge I* that a contractor's claims against an architect in a construction defect case are limited to claims of equitable indemnity. Specifically, Lend Lease seeks to distinguish its claims from those in *Stoneledge I* by noting the *Stoneledge* claims arose from the relationship between a general contractor and subcontractor rather than the special relationship between a general contractor and an architect. We see this as a distinction without a difference.

In *Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708 (1971), a foundational South Carolina equitable indemnity case, the supreme court explained:

> Ordinarily, if one person is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another, he may maintain an action over for indemnity against the person whose wrong has thus been imputed to him; but this is subject to the proviso that no personal negligence of his own has joined in causing the injury.

*Id.* at 34, 183 S.E.2d at 710 (quoting *North Carolina Elec. Power Co. v. French Broad Mfg. Co.*, 105 S.E. 394, 396 (N.C. 1920)). The court concluded that in indemnity actions, "brought where the duty to indemnify is either implied by law or arises under contract, and no personal fault of the indemnitee has joined in causing the injury, reasonable attorneys' fees incurred in resisting the claim indemnified against may be recovered as part of the damages and expenses." *Id.*

For a party to properly maintain an equitable indemnity claim, there must be a sufficient relationship between the claimant and the party against which it seeks to recover. *See Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 307 S.C. 128, 132, 414 S.E.2d 118, 121 (1992) ("A sufficient relationship exists when the at-fault party's negligence or breach of contract is directed at the non-faulting party and the non-faulting party incurs attorney fees and costs in defending itself against the other's conduct."); *Tommy L. Griffin Plumbing*, 320 S.C. at 55, 463 S.E.2d at 89 (holding a special relationship sufficient to create an extra-contractual duty of care may exist between a general contractor and a design professional).

The circuit court's order granting summary judgment on Lend Lease's negligence and warranty claims neither ignored nor misapplied *Tommy L. Griffin Plumbing* because it did not defeat Lend Lease's ability to maintain its equitable indemnity claim against Antunovich. Instead, the circuit court determined Lend Lease's negligence and warranty claims failed as a matter of law because they are "nothing more than equitable indemnity claims."

**Conclusion**

Due to the derivative nature of Lend Lease's negligence and breach of warranty claims, the circuit court's order granting partial summary judgment in favor of Antunovich is

**AFFIRMED.**

**GEATHERS, J., and HILL, A.J., concur.**